## FOSTER v. MANUFACTURERS' FINANCE CO.

Circuit Court of Appeals, First Circuit. November 19, 1927.

No. 2171.

**1. Bankruptcy ⟜166(4¼)—Assignment of bills receivable to one having reasonable cause to believe assignor insolvent held voidable; "voidable preference."**

Where large amount of bills receivable assigned to finance company for security for loan were discovered to be forgeries, and finance company, within four months preceding bankruptcy of pledgor, obtained assignments of valid bills receivable in place of part of the forgeries at a time when it had reasonable cause to believe pledgor was insolvent, *held*, the procurement of such assignments constituted "voidable preference."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Voidable.]

**2. Bankruptcy ⟜165(1), 188(3)—Valid equitable liens are enforceable in bankruptcy, and not transmuted into preferences by appropriation within four months preceding bankruptcy.**

Valid equitable liens antedating the four months period preceding bankruptcy are enforceable in bankruptcy and are not transmuted into preferences by acts of appropriation and enforcement within four months period.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

In the matter of the bankruptcy of John H. Sullivan. From a decree of the District Court holding certain assignments to the Manufacturers' Finance Company not voidable preferences, Frederick S. Foster, trustee, appeals. Decree reversed, and case remanded.

Robert A. B. Cook, of Boston, Mass. (Phipps, Durgin & Cook, of Boston, Mass., on the brief), for appellant.

Harrison J. Barrett, of Boston, Mass. (George W. Reed and Friedman, Atherton, King & Turner, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The facts of controlling importance in this bankruptcy preference case are within narrow compass.

[1] The bankrupt, Sullivan, assigned to the Finance Company about $60,000 of bills receivable, designated specifically. Of these, about $49,000 were forgeries. In March, 1925, the representative of the Finance Company examined Sullivan's books, discovered the fraud, and procured from Sullivan, by way of partial substitution for the forged accounts, assignments of about $10,000 of valid receivables. It is conceded that the Finance Company then had reasonable cause to believe Sullivan insolvent. Adjudication ensued the next month.

The controversy is over the proceeds of the new and valid receivables thus assigned in March. The referee, whose jurisdiction is conceded, held the transaction a preference. The District Court (Lowell, J.) reversed the referee, saying: "The company lent its money on the faith of the bankrupt's assigning good accounts. When it discovered that the accounts were bad—in fact, had no existence —it required him to do merely what he had agreed to do. His estate has not been depleted by the transfer of the good accounts, because the bankrupt merely did under compulsion what he should have done in the first place; and his estate would not have received the benefit of the money loaned, unless the Manufacturers' Company had trusted him to assign good accounts. * * * The case at bar is similar to those which involve the doctrine of what is known as an 'equitable lien.' Sexton v. Kessler, 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995."

We think the referee was right, and the court wrong. Forged accounts are not part of a bankrupt estate; they are nothing. Sullivan's warranty of title of the specifically described and assigned accounts cannot be extended into an equitable lien over undesignated, unassigned (and, for aught that appears, then nonexistent) accounts. The assignments were limited to specifically assigned accounts; they can no more be extended to cover, by way of equitable lien or any other right, undesignated accounts, than a chattel mortgage of furniture not owned can be extended to cover undescribed furniture actually owned. When Sullivan assigned valid receivables in substitution for forged receivables, he depleted his estate to that extent. Prior to the March transfer, what the Finance Company had was forgeries, plus Sullivan's contract or covenant that they were valid. That contract or covenant cannot be related to the assignments in March.

The theory urged, and in effect adopted by the court below, is that, because Sullivan procured money from the Finance Company on forged receivables, an equity then and there arose against all of Sullivan's real assets of the same general nature, although unmentioned either specifically or in general terms in the contract or instruments of assignment, and even if not then in existence. We regard this theory as unsound, on principle and authority.

[2] Undoubtedly valid equitable liens antedating the four months period are enforceable in bankruptcy. Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577, Westall v. Wood, 212 Mass. 540, 99 N. E. 325. They are not transmuted into preferences by acts of appropriation and enforcement within the four months period. This was the underlying proposition of our decision in Atherton v. Beaman (C. C. A.) 264 F. 878. To the same effect was Mass. Trust Co. v. MacPherson (C. C. A.) 1 F.(2d) 769. In that case the difference in opinion in the court arose, not out of the general principle that an equitable lien created prior to the four months period is enforceable, but whether, under the facts in that case, the original transaction did or did not create an equitable lien. To the same effect is In re Robert Jenkins Corporation (C. C. A.) 17 F.(2d) 555.

An analysis and discussion of the so-called "cotton cases" would not be fruitful. Pyle v. Texas Transport Co. (D. C.) 192 F. 725; Id. (C. C. A.) 203 F. 1023; Lovell v. Newman (C. C. A.) 192 F. 753; Hentz v. Lovell (C. C. A.) 192 F. 762.

It is enough to observe that, if these decisions are to be interpreted as the Finance Company's learned counsel urges, that interpretation was not adopted by the Supreme Court in Pyle v. Texas Transport Co., 238 U. S. 90, 98, 35 S. Ct. 677, 59 L. Ed. 1215, where the result below was affirmed simply on the ground that there was no evidence of reasonable cause to believe. We find nothing in these decisions, nor elsewhere, warranting us in so extending the doctrine of equitable lien as to give the victim of fraud a right to collect within the four months period damages out of the assets of a known insolvent. The fact that the Finance Company's claim originated in Sullivan's fraud gives it, for present purposes, no better standing than if it accrued from his unintentional, but honest, failure to make good his warranty of the collectibility of valid accounts.

The decree of the District Court is reversed, with costs to the appellant, and the case is remanded to that court for further proceedings not inconsistent with this opinion.