**In re ACE FRUIT & PRODUCE CO., Inc.**

District Court, S. D. New York.
April 27, 1943.

Duberstein & Schwartz, of Brooklyn, N. Y. (Max Schwartz, of Brooklyn, N. Y., of counsel), for trustee.

Yudell & Zuckerman, of New York City (Leonard Bronner, Jr., of New York City, of counsel), for respondent Regent Factors Corporation.

HULBERT, District Judge.

These are cross petitions (1) by the trustee in bankruptcy and (2) by a creditor of the bankrupt, for a review of an order of the Referee in Bankruptcy dated January 21, 1943.

The order in question disallowed a claim of the creditor amounting to $10,785.33 unless, within thirty days such creditor paid to the trustee preferential transfers in the sum of $821.02. See § 57, sub. g, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. g. The trustee challenges the inadequacy of the additional payments and asserts that in addition thereto the creditor should have been directed to pay him the sum of $2,713.45. The creditor, on the other hand, contends that the Referee erred in directing the payment of any amount to the trustee, and also erred in allowing the trustee costs and disbursements.

On the part of the trustee there is no dispute as to the facts. Briefly, they may be summarized as follows:

On August 5, 1941, the bankrupt and Regent Factors Corporation entered into a contract whereby the latter agreed to purchase such of the bankrupt's accounts receivable as were acceptable to it and agreed to pay the bankrupt 75% of the face value of such accounts less a certain percentage for compensation and interest on the amount thus paid. The remaining 25%, less stipulated deductions, was to be paid to the bankrupt on the 1st and 15th day of the month after receipt of payments on the accounts.

The bankrupt warranted that the accounts were valid and that each would be paid in full; it was also agreed that any money or property belonging to it which might come into the possession of the creditor in any manner, could be retained by the creditor and applied in payment of any obligation which might be owed to it by the bankrupt.

Although stated to be a contract to purchase and sell accounts receivable, it is evident that the document thus so designated was in reality an agreement to assign accounts as security for advances. In re L. Gandolfi & Co., Inc., 2 Cir., 113 F.2d 300.

On August 5, 1941, a second contract was entered into between the parties wherein provision was made, among other things, for the division of the capital stock of the bankrupt into three equal parts: two officers of the bankrupt to receive one-third part each, and the remaining part to be transferred to the attorney for the creditor to be held by him in escrow. It was further provided that, in the event of any default by the two officers of the bankrupt, or by either of them, the stock held by such

officer or officers was, upon demand of the creditor, to be transferred to the attorney for the creditor, to be held in escrow pending an accounting and payment of any indebtedness found to be due the creditor.

Thereafter, the parties entered upon the performance of said contracts. Accounts were assigned by the bankrupt and advances were made by the creditor until March 18th, 1942. However, the Referee found that on March 3, 1942, the bankrupt was insolvent, although the creditor did not have reasonable cause to know of such insolvency until March 16th, 1942. Between those dates, $10,554.33 in accounts were assigned by the bankrupt to the creditor upon which the latter made advances to the former in the total sum of $6,385.42. The creditor subsequently collected $9,098.-87 on these accounts, or $2,713.45 in excess of the amounts advanced.

On March 16, 1942, the creditor took an assignment of accounts in the sum of $235.67 to replace a previously assigned account for merchandise which was frozen and presumably worthless. The next day the creditor commenced an examination of the bankrupt's books and on March 18th the bankrupt's officers admitted that assigned accounts having a face value of $7,700 were fictitious. On that same day accounts totaling the sum of $480.09 were assigned to the creditor, not for concurrent advances but, to replace fictitious accounts. Of this amount $461.33 was collected. It subsequently developed that many more accounts were fictitious, most of which had been assigned prior to March 3, 1942.

Following this disclosure, upon demand of the creditor, the bankrupt's officers delivered the shares of stock of the bankrupt corporation held by them to the attorney for the creditor who, together with the accountant for the creditor, then became the officers of the bankrupt and caused a bank account in the sum of $1,377.91 and two refunds amounting to $24.02 to be transferred to the creditor. At the suggestion of its attorney, the creditor advanced $100 to pay wages owed the bankrupt's employees. This amount was subsequently repaid out of the bankrupt's funds. Thereafter, and on May 22, 1942, the petition in bankruptcy was filed.

The Referee held that only the amounts collected on the assignments made on March 16th and March 18th, respectively, the two refunds and the repayment of the money advanced for wages, totaling in all $821.02, were preferential transfers. The trustee urges that the $2,713.45, representing accounts collected over and above the concurrent advances on the assignments made between March 3rd and March 14th, were also preferential transfers in view of the fact that such amounts were collected after the creditor had acquired knowledge of the bankrupt's insolvency and that such moneys were used to satisfy antecedent debts. On this point the Referee held that, if the assignments in question constituted all the transactions between the parties, the trustee might be entitled to recover the surplus, not on any theory of fraudulent or preferential transfers, but on an accounting. However, he held, on the authority of Grossi v. Rialto Security Corporation, 273 N.Y. 403, 7 N.E.2d 836, that under the collateral security arrangement between the parties, the creditor had the right to apply any surplus moneys over concurrent advances in payment of any deficit arising from prior advances. This court agrees with that determination by the Referee, but for a different reason.

The statute pursuant to which the order under review was made, provides as follows (11 U.S.C.A. § 93, sub. g): "The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this title, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments or encumbrances."

The retention of the surplus moneys did not constitute fraudulent transfers within the meaning of Section 67, sub. d, of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d, because fair consideration was given by the creditor. At most they constituted preferential transfers; but not all preferences come within the mandate of Section 93, sub. g, supra. The section applies only to such preferences as are voidable.

A preference is defined in Section 60, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, as a transfer of property to a creditor on account of any antecedent debt made by an insolvent debtor within four months of the filing of the petition in bankruptcy. A voidable preference is defined in Section 60, sub. b, as a preference given to a creditor who knew, or who had rea-

sonable cause to believe, at the time it was given, that the debtor was insolvent.

■ It is apparent from the agreement between the bankrupt and the creditor that the proceeds of the assigned accounts were intended to be used to satisfy concurrent advances as well as antecedent debts. But the bankrupt was insolvent on March 3, 1942, and the use of the proceeds of any accounts thereafter assigned in payment of an antecedent indebtedness would have been a preferential transfer. Assuming, therefore, that the creditor obtained a preference when the surplus moneys collected on accounts assigned between March 3rd and March 14th were used to repay advances previously made, it is still incumbent upon the trustee to show that such preference was voidable. To do this, it must be proved that at the time the preference was obtained the creditor knew, or had reasonable cause to believe, that the bankrupt was insolvent. This depends upon when the moneys were transferred within the meaning of the Bankruptcy Act. Section 60, sub. a, 11 U.S.C.A. § 96, sub. a, provides that a transfer "shall be deemed to have been made at the time when it became so far perfected that no bonafide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, * * *".

■ Whether there was such a transfer in this case is to be determined according to the law of the State of New York. Okin v. Isaac Goldman Co., 2 Cir., 79 F.2d 317.

■ The fact that the moneys were collected on the assigned accounts after the creditor acquired knowledge of the bankrupt's insolvency is not, necessarily, the determining factor. Nor can it be said that the collections related back to the date the two agreements between the parties were entered into because such agreements were not assignments but only contracts to assign rights in the future. See Rockmore v. Lehman, 2 Cir., 129 F.2d 892. But as the accounts were in existence when the assignments were made, the transfers took place on the dates of such assignments and not when the moneys were collected. Sexton v. Kessler Co., 225 U.S. 90, 32 S.Ct. 657, 56 L.Ed. 995; In re L. Gandolfi & Co., Inc., supra; Superior Brassiere Co., Inc., v. Zimetbaum, 214 App.Div. 525, 212 N.Y.S. 473. These assignments were all made prior to March 16, 1942, on which date the creditor, for the first time, had reasonable cause to believe that the bankrupt was insolvent. Accordingly, they were not voidable preferences and did not come within the provisions of Section 57, sub. g, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. g.

■■ The Referee's findings with reference to the assignments made on March 16th and March 18th, 1942, and the two refunds thereafter acquired are also correct. The two assignments were not made for concurrent advances of funds and were made after the creditor knew, or had reasonable cause to believe, that the bankrupt was insolvent. The creditor disputes the Referee's finding in this respect, denying that it had knowledge of or cause to believe, that the bankrupt was insolvent until some time after these two assignments were made. However, the record amply supports the Referee. The record shows that on March 16, 1942, at the latest, the creditor was put on notice that something was wrong with the assigned accounts and immediate inquiry would have revealed, as it did several days later, that a large number of the accounts were fictitious, and that the bankrupt was insolvent. The fact that the assigned accounts replaced previously assigned fictitious accounts is of no consequence. Foster v. Manufacturers' Finance Co., 1 Cir., 22 F.2d 609.

■ As to the two refunds, the creditor claims the right to retain them because of the provision in the contract between the parties that all property of the bankrupt coming into its possession might be retained by the creditor and applied in satisfaction of other obligations. However, the creditor did not acquire possession of the refunds until after it had acquired knowledge of the bankrupt's insolvency. The application of such funds on account of antecedent debts of the bankrupt constituted them voidable preferences.

■ As to the money advanced by the creditor to pay wages due the bankrupt's employees and repaid out of the bankrupt's funds, I think the Referee was in error, because the obligation to pay the wages in question was that of the bankrupt, not the creditor's, and when the money was advanced by the creditor for that purpose, it constituted a loan to the bankrupt. This

loan was apparently made in good faith, without security, after the creditor had received the preferences referred to above. If such loan had not been repaid, the creditor could have offset it against the amount of the preferences which it must turn back to the trustee. Section 60, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. c. The same result was accomplished by the repayment.

■ It was not error for the Referee to award costs and disbursements to the trustee who was the successful party even though the recovery was less than he had hoped for.

The order of the Referee is modified to the extent indicated in this opinion, and as so modified, will be confirmed. Settle order on notice.