# SEXTON, TRUSTEE IN BANKRUPTCY OF KESS-LER & COMPANY, v. KESSLER & COMPANY, LIMITED.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 92.   Argued December 12, 13, 1911.—Decided May 27, 1912.

The conduct of business men acting without lawyers and in good faith, attempting to create a personal security for an actual debt, should be fairly construed as actually effecting what the parties meant; and so *held*, in this case, that an escrow of securities made by a banking firm in New York to secure its drafts upon a foreign bank amounted to a lien on the securities to be preferred to the claim of the trustee in bankruptcy, notwithstanding that the New York firm retained physical power over the securities, as agent for the foreign house, and had the right to substitute other securities for those withdrawn and sold.

Under the decisions of this court, and the courts of New York, a customer has such an interest in securities carried for him by a broker that a delivery to him after the insolvency of the broker is not necessarily a preference under the bankruptcy law. *Richardson* v. *Shaw*, 209 U. S. 365.

172 Fed. Rep. 535; 97 C. C. A. 161, affirmed

THE facts, which involve the question of whether under the Bankruptcy Act of 1898, certain transfers of securities by the bankrupt constituted a fraudulent preference, are stated in the opinion.

*Mr. John Larkin*, with whom *Mr. Alexander S. Andrews*, was on the brief, for appellant:

There was no valid legal pledge to the defendants because possession was not given until October 25, 1907. *Casey* v. *Caveroc*, 96 U. S. 467; *Wilson* v. *Little*, 2 N. Y. 443; *Buffalo German Ins. Co.* v. *Third National Bank*, 162 N. Y. 170; *Security Warehousing Co.* v. *Hand*, 206 U. S. 415.

Possession is of the essence of a pledge; without it no privilege can exist as against third persons. *Casey* v. *Caveroc,* 96 U. S. 467; *Casey* v. *Natl. Park Bank,* 96 U. S. 492; *Casey* v. *Schuhardt,* 96 U. S. 494.

The legal pledge having failed, it cannot be supported either as an equitable pledge, an equitable mortgage or a declaration of trust. There was no equitable pledge. *In re Great Western Mfg. Co.,* 18 Am. B. R. 259; *Page* v. *Rogers,* 211 U. S. 575; *Wilson* v. *Nelson,* 183 U. S. 191; *Security Warehousing Co.* v. *Hand,* 206 U. S. 415; *Fourth Street Bank* v. *Millburne,* 172 Fed. Rep. 177; *Re Sheridan,* 98 Fed. Rep. 406; *Copeland* v. *Barnes,* 147 Massachusetts, 388; *Bank of Leavenworth* v. *Hunt,* 11 Wall. 394; *Griswold* v. *Sheldon,* 4 Comst. 581; *Wood* v. *Lowry,* 17 Wendell, 492.

A court of equity will not uphold, on the theory of equitable lien, an attempted pledge which fails at law, when the rights of creditors are involved. *Casey* v. *Caveroc,* 96 U. S. 467; *Security Warehousing Co.* v. *Hand,* 206 U. S. 415; *Wilson* v. *Little,* 2 N. Y. 446; *Buffalo G. I. Co.* v. *Third Natl. Bank,* 162 N. Y. 163; *Ryttenberg* v. *Schefer,* 11 Am. Bk. Rep. 664; *Nisbit* v. *Macon Bank,* 12 Fed. Rep. 686; *Fourth St. Natl. Bank* v. *Milburne Mills Co.,* 172 Fed. Rep. 177; *Zartman* v. *Bank,* 189 N. Y. 267.

What the courts have defined as "the inexorable rule of law" is that possession of the pledge must be in the pledgee. Van Zile's Bailments and Carriers, § 237a; *Skelton* v. *Codington,* 185 N. Y. 88; *Frank* v. *Volkommer,* 205 U. S. 529.

There is no such thing as an equitable pledge; one either has made a pledge or he has not. Support for the existence of such a contradiction as "equitable pledge" must be found, if at all, in the fact that equity in some circumstances will consider as done what was agreed to be done. But that doctrine has no application where bankruptcy intervenes.

The bankrupts never agreed to give nor did Manchester stipulate to receive, possession (except after financial embarrassment had intervened)—and hence there was no contract, relative to possession, for equity to enforce by deeming it performed.

There was no equitable mortgage, as held by a majority of the Court of Appeals.

The parties did not intend to create a mortgage, but only a pledge with peculiar features, viz., possession to remain in the pledgor with absolute power of disposal.

In New York, as elsewhere, a mortgage of personal property is a transfer of title subject to be divested on condition subsequent, viz., by payment of the debt. The parties intended no such thing.

The intention of the parties is shown by their correspondence.

Even if the parties had intended to make a mortgage it would have been invalid in so far as it purported to cover after-acquired property; and *in toto* because of provisions in it, and in the method of carrying it out, that made it fraudulent in law and absolutely void as to creditors. The *Zartman Case*, 189 N. Y. 271.

The word "escrow" has usually to do with the passing of title, but it has to do with the passing of title only upon delivery, and prior to the delivery of the escrow the rights of the parties as to title remain exactly as before the escrow was created.

The Chattel Mortgage Act of New York (Lien Law, § 90) provides that all mortgages of "goods and chattels" shall be absolutely void unless there is an actual and continued change of possession, or the mortgage is filed.

*Stackhouse* v. *Holden*, 66 App. Div. 433; *Risley* v. *Phenix Bank*, 83 N. Y. 318; *Hudson River Bank* v. *Chaskin*, 28 App. Div. 311, can all be distinguished.

The learned judge was in error in stating that there was no fraud in the transaction here, and that, as no rights

of purchasers or attaching creditors intervene, the taking possession by the Manchester house was entirely legal and proper; such is not the law of New York. *Parshall* v. *Eggert*, 54 N. Y. 18; *Skilton* v. *Coddington*, 185 N. Y. 86; *Sabin* v. *Camp*, 98 Fed. Rep. 97, are not authority as a declaration of the laws of the State of New York.

There was no declaration of trust.

Whether there was a declaration of trust, and a consequent transfer of the title, is just as much a question of local law as the other questions, namely, those of pledge and equitable mortgage. As to the law of New York, on this subject, see *Martin* v. *Funk*, 75 N. Y. 137; *Matter of Totten*, 179 N. Y. 112; *Young* v. *Young*, 80 N. Y. 422; *Barry* v. *Lambert*, 98 N. Y. 300; *Matter of Bolin*, 136 N. Y. 177; *Locke* v. *Farmers' L. & T. Co.*, 140 N. Y. 135.

Unless, therefore, Kessler & Co. of New York by their letters, certificates and acts intended to divest themselves of all beneficial interest in the securities and to hold the whole interest therein for the benefit of Kessler & Co. of Manchester, the transaction cannot be sustained as a declaration of trust.

If a pledge, imperfect or invalid because of want of delivery of the pledged property, can be sustained as a declaration of trust, the result will practically be to abolish technical pledges, "whose very essence" is the possession of the pledged property by the pledgee. *Young* v. *Young*, 80 N. Y. 422.

The cases where equity has given relief in insolvency cases are generally where the claimant's money has produced the very thing sought to be subjected to the lien. *National Bank* v. *Rogers*, 166 N. Y. 380; *Hauselt* v. *Harrison*, 105 U. S. 401; *Hurley* v. *Atcheson &c. R. R.*, 213 U. S. 126.

The transaction between Kessler & Co. of New York and Kessler & Co. of Manchester was inequitable and in

bad faith and deceived existing as well as prospective creditors.

The law is in favor of the appellant without respect to the appellee's good or bad faith. *Robinson* v. *Elliott*, 22 Wall. 525.

The New York house held themselves out to all the world as the owners of the securities, as the arrangement expressly authorized. The result was a credit with various bankers and customers, fictitious in fact and fraudulent in law.

This case is not one of fraud based upon express misrepresentation, and it is not necessary for the trustee in bankruptcy to show that the defendants made express representations false in fact. But the case is full of evidence to show that with the knowledge and consent of the Manchester house the New York house represented itself as the owner of the securities over which the Manchester house claimed a secret lien. *Martin* v. *Mathiot*, 14 Serg. & R. 214.

The agreement between the parties was fraudulent as a matter of law irrespective of good or bad faith, and was void as against creditors.

Clauses permitting the debtor to use the securities as his own make the agreement fraudulent in law and void *ab initio* as to creditors; and if the debtor and creditor act in such a way that the debtor uses the property as his own, the result is the same. *Zartman* v. *Bank*, 189 N. Y. 267, 273; *Skilton* v. *Codington*, 185 N. Y. 80; *Bowdish* v. *Page*, 153 N. Y. 104; *Scherl* v. *Flam*, 129 App. Div. 561; *Hangen* v. *Hachemeister*, 114 N. Y. 566; *Southard* v. *Benner*, 72 N. Y. 424; *Potts* v. *Hart*, 99 N. Y. 168; *Russell* v. *Winne*, 37 N. Y. 591; *Mandeville* v. *Avery*, 124 N. Y. 376; *Wood* v. *Lowry*, 17 Wend. 492; *Chatham Bank* v. *O'Brien*, 6 Hun, 231; *Griswold* v. *Sheldon*, 4 N. Y. 584; *Gardner* v. *McEwen*, 19 N. Y. 123; *Brackett* v. *Harvey*, 91 N. Y. 214; *Bainbridge* v. *Richmond*, 47 Hun, 391.

When an agreement for security or protection is thus fraudulent in law and void, it may be attacked by any creditor, whether having a judgment or not, if it is impracticable or useless to obtain a judgment. *Skilton* v. *Codington,* 185 N. Y. 80, 86, 89; *Russell* v. *St. Mart,* 180 N. Y. 355, 359, 360; *Karst* v. *Gane,* 136 N. Y. 316, 323; *Stephens* v. *Perrine,* 143 N. Y. 476: *Knapp* v. *Milwaukee Trust Co.,* 216 U. S. 545.

*Mr. Abram I. Elkus* and *Mr. F. C. McLaughlin,* with whom *Mr. Rufus W. Sprague, Jr.* was on the brief, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill brought by a trustee in bankruptcy to set aside an alleged fraudulent preference. The Circuit Court of Appeals reversed a decree of the District Court for the plaintiffs and dismissed the bill. 172 Fed. Rep. 535. 97 C. C. A. 161. It will be enough for our decision to state the following facts: The appellee was an English company and the bankrupts a New York firm intimately connected with it which for many years had drawn upon it. In February, 1903, the English house requested the New York firm to set aside securities for their drawing credit. The New York firm wrote on June 30 that they had that day placed in a separate package in their safe deposit vaults certain securities named, the package being marked 'Escrow for account of Kessler & Co., Limited, Manchester;' adding 'This escrow is intended as a protection against our long drawings against your good selves.' This letter was acknowledged and it was added "If at any time you have the opportunity of realizing these securities or any part of them, you are at liberty to take them and to replace them by others of equal value, though in that case we should of course like to see rather better quality." In

December of the same year the English house suggested a form of certificate as follows: "We certify that we have specially set aside and hold for your account, on this, the 31st day of December, '03, as security for the drawing credit which you accord us, the following securities. Name secs. and market value." This was conformed to and the New York house also entered the securities and all substitutions on their loan book. Substitutions were made from time to time and the English house notified. The securities always were either negotiable by delivery or indorsed in blank. They were marked and kept as stated in the letter upon a separate shelf of the New York firm's vault, and they never were removed except in 1905 and 1906 when they were taken to the office to be examined and checked off by representatives of the English company. Business went on in this way until the panic of 1907. On October 25 of that year, the stability of the New York firm being in doubt, it handed over the escrow securities to an agent of the English company then in New York and he deposited them in a safe deposit vault in the name of the company. On November 8 a petition of bankruptcy was filed and on November 27 the New York firm was adjudged bankrupt. Notwithstanding arguments to the contrary it may be assumed that the arrangement between the parties was made in good faith and intended and believed to be valid, and on the other hand that at the time of the change of custody on October 25, within four months of the petition, the New York firm was insolvent and that the English company had reasonable cause to believe that a preference was intended if its rights began only on that date.

So far as the interpretation of the transaction is concerned it seems to us that there is only one fair way to deal with it. The parties were business men acting without lawyers and in good faith attempting to create a present security out of specified bonds and stocks. Their

conduct should be construed as adopting whatever method consistent with the facts and with the rights reserved is most fitted to accomplish the result. If an express declaration of an equitable lien, or again a statement that the New York firm constituted itself the servant of the English company to maintain possession for the latter, or that it held upon certain trusts, or that a mortgage was intended, or any other form of words, would effect what the parties meant, we may assume that it was within the import of what was done, written and said. So the question is whether anything in the situation of fact or the rights reserved prevents the intended creation of a right *in rem*, or at least one that is to be preferred to the claim of the trustee.

The bankruptcy law by itself does not avoid the transaction. *Thompson* v. *Fairbanks*, 196 U. S. 516. *Humphrey* v. *Tatman*, 198 U. S. 91, 95. A trustee in bankruptcy does not stand like an attaching creditor; he gets no lien by the mere fact of his appointment. *York Manufacturing Co.* v. *Cassell*, 201 U. S. 344. *Zartman* v. *First National Bank of Waterloo*, 216 U. S. 134, 138. The most obvious objection is that the continued physical power of the New York firm over the securities and its right to withdraw and substitute admittedly reserved are inconsistent with a title or lien of the English house in any form. But the decisions of this court and of New York agree that there may be title in a stronger case than this. When a broker agrees to carry stock for a customer he may buy stocks to fill several orders in a lump; he may increase his single purchase by stock of the same kind that he wants for himself; he may pledge the whole block thus purchased for what sum he likes, or deliver it all in satisfaction of later orders, and he may satisfy the earlier customer with any stock that he has on hand or that he buys when the time for delivery comes. Yet as he is bound to keep stock enough to satisfy his contracts, as the New York

firm in this case was bound to substitute other security if it withdrew any, the customer is held to have such an interest that a delivery to him by an insolvent broker is not a preference. *Richardson* v. *Shaw,* 209 U. S. 365. *Markham* v. *Jaudon,* 41 N. Y. 235. So a depositor in a grain elevator may have a property in grain in a certain elevator although the keeper is at liberty to mix his own or other grain with the deposit and empty and refill the receptacle twenty times before making good his receipt to the depositor concerned.

Whether enough has been done to give a right of any kind in certain property is a question of more or less. See *Union Trust Co.* v. *Wilson,* 198 U. S. 530, 537. In the case of ordinary goods and chattels, where, for instance, a man mortgages his stock in trade as it may be from time to time, retaining possession and full power to sell and replace or not as he sees fit, it well may happen that the security fails. *Skilton* v. *Codington,* 185 N. Y. 80. *Zartman* v. *First National Bank of Waterloo,* 189 N. Y. 267. So a general promise to give security in the future is not enough. But the present was a more limited and cautious dealing. It was confined to specific identified stocks and bonds on hand, and purported to give an absolute present right, qualified only by possible substitution and perhaps by a right of partial withdrawal if the remaining securities had risen sufficiently in value. It purported not to promise but to transfer; and the subject-matter was not goods and chattels in the sense of the New York mortgage law as we understand that law to be interpreted by the New York courts. The transaction was not void as against creditors irrespective of attachment, as in *Knapp* v. *Milwaukee Trust Co.,* 216 U. S. 545. *Niles* v. *Mathusa,* 162 N. Y. 546. There can be no doubt, as was said by the court below, that before the bankruptcy the English house had an equitable right at least to possession if it wanted it. While the phrase equitable lien

may not carry the reasoning further or do much more than express the opinion of the court that the facts give a priority to the party said to have it, we are of opinion that the agreement created such a lien at least, or in other words, that there is no rule of local or general law that takes from the transaction the effect it was intended to produce. *Hurley* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 213 U. S. 126, 134. When the English firm took the securities it only exercised a right that had been created long before the bankruptcy and in good faith. Such we understand to be the law of NewYork and in the absence of any controlling statute to the contrary such we understand to be what the law should be. *Parshall* v. *Eggert,* 54 N. Y. 18. *National Bank of Deposit* v. *Rogers,* 166 N. Y. 380.

*Decree affirmed.*