## JORDAN v. GREENWOOD.

District Court, D. Maine, S. D. January 16, 1928.

Bankruptcy ⊂⊃161(2)—Delivery of collateral within four months of bankruptcy held not voidable preference, right being created theretofore.

Where, at time of loan by defendant corporation, pursuant to agreement for collateral, it made and signed note payable to defendant, specifying certain bonds and stock as "having been deposited herewith as collateral," giving payee right to sell it or any substituted collateral in case of nonpayment, and note and collateral not delivered to defendant personally at the time, were placed in an envelope, marked as defendant's property, and left in possession of defendant's son, president of the corporation, as agent for defendant, and also for convenience in substituting collateral from time to time, there was no voidable preference, though actual delivery into the personal possession of defendant of note, with original and substituted collateral always carried on corporation's books as "delivered," was within four months of bankruptcy of corporation; defendant having the same right of possession, when it was given, that he had at the time of the loan, when he had,

if not a pledge, at least an equitable lien in the nature of a mortgage.

In Equity. Suit by Arthur W. Jordan, trustee in bankruptcy of Kenney & Greenwood, Inc., against Chester Greenwood. On exceptions to master's report, sustaining claim of preference. Exceptions sustained.

Maurice E. Rosen, of Portland, Me., for Jordan, trustee.

Samuel Titcomb, of Augusta, Me., for Chester Greenwood.

PETERS, District Judge. This is a suit in equity, brought by a trustee of an estate in bankruptcy to recover an alleged preference under section 60b of the Bankruptcy Act (11 USCA § 96). By an order of court it was referred to a special master to take testimony and report the evidence, with findings of fact and conclusions of law. The master has made his report, sustaining the claim of preference. Exceptions to the report having been filed, I have reviewed the evidence, and am of the opinion that the exceptions should be sustained, on the ground that the master has failed to apply a principle of law which I think is applicable to the facts as found by him.

The defendant is the father of the president of the bankrupt corporation, Kenney & Greenwood, heretofore doing a brokerage business in this state, and in October, 1924, loaned the corporation $4,000, with the understanding that it was to be secured by collateral, with a margin of security of 25 or 30 per cent., to be kept good. A note for $4,000 was made and signed by Kenney & Greenwood at the time the money was received, October 20, 1924, payable to the defendant, being an ordinary collateral note payable on demand, specifying in the blank space left for that purpose certain bonds and stock as "having been deposited herewith as collateral security," giving the payee the right to sell the same or any substituted collateral in case of nonpayment, etc. Neither the note nor any collateral was delivered to the defendant personally at the time of this transaction, it being testified by the defendant and by his son, president of Kenney & Greenwood, that both the note and the collateral were placed in an envelope marked "Property of Chester Greenwood," and left in the possession of the son, Lester Greenwood, as agent for his father, and also for convenience in substituting collateral from time to time for the original collateral named in the note. About March, 1925, within four months prior to the bankruptcy, when the corporation was insolvent, and known by all parties to be so, the note and the collateral named in the bill in equity were delivered by Lester Greenwood into the personal possession of his father, the defendant. At that time the collateral had been changed in part, two out of the original five items being apparently the same; the others being substitutions, as permitted by the original arrangement and customary in such transactions.

It is the delivery of this collateral security, and of a certain $500 bond, which will be referred to later, that is claimed to be the preference, as bankruptcy followed within four months.

The master adopted the view that this delivery was the first and only delivery of security for the debt of $4,000 created in October of the previous year, and, the other elements of a preference being admittedly present, sustained the claim of the plaintiff. I think the master did not give sufficient consideration to the status of the parties when the loan was made, or to the question whether, when the defendant took actual possession of the securities, he was not exercising a right that had been created prior to the four-months period, and in good faith.

The note for $4,000 made and signed October 20, 1924, carried a detailed description of collateral pledged. The books of Kenney & Greenwood, introduced in evidence by the plaintiff, show an account opened on that day with "Chester Greenwood Loan," a credit of $4,000, and a description of certain collateral (the same mentioned in the note), marked after each item with a "D," which the expert bookkeeper, called by the plaintiff, says means "delivered." There is no testimony to controvert the statement of Lester Greenwood that the collateral was separately placed in an envelope and marked "Property of Chester Greenwood," nor is there any inherent improbability of such an occurrence, under the circumstances and the relationship of the parties.

The books, as well as the testimony of Lester Greenwood, indicate that this collateral was changed from time to time, till it took the form in which it was later actually delivered to the defendant, and it was always carried as "delivered"—"D," in this loan account on the books. A letter from Lester Greenwood to his father, of November 12, 1924, shows him in touch with the situation:

"The firm owes you $5,000 on one note, secured by mortgage of furniture, etc., and $4,000 on recent collateral note. * * * Neither note is oversecured, but I think you are fairly safe on the $4,000."

This is not the case of a promise to give security at a future time. It seems clear that the parties intended to create a lien on the designated securities in favor of the defendant, and, even if he did not receive possession of them through the possession of his son as agent, he at least had the right to take possession, which existed all the time until the personal possession was taken in March, and was as good against the trustee in bankruptcy as against the bankrupt.

I regard the situation here as analogous to that in the case of Sexton v. Kessler & Co., 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995. In that case the securities retained in the possession of one party in New York were set apart and marked as held as security for the other party in London. Actual delivery occurred just before bankruptcy of the defendant; the other party being familiar with the fact of insolvency. The Supreme Court held that the creditor had an equitable lien, under which he could take possession at any time, and that delivery immediately before bankruptcy simply related back to the original transaction when the right to possession was created, and that there was no preference.

So, in this case, there being no fraud shown, and no right of purchasers or of attaching creditors having intervened, the defendant had the same right to possession in March that he had the previous October. At that time, if not a pledge, he at least had an equitable lien in the nature of a mortgage. Certain assets were impressed with that lien, and it was no diminution of any estate of the bankrupt to which the trustee was entitled to have that lien ripen into an actual pledge. The giving possession in March was not a new pledge to secure an old debt, which would be invalid under the circumstances then existing, but the enforcement of a pre-existing right. In fairness, as well as in law, the parties should be permitted to carry out their original arrangement as to the security for this debt. To hold otherwise would be an unfair discrimination against a secured creditor. See Gilbert's Collier on Bankruptcy, p. 818.

I have proceeded on the theory that the securities actually delivered in March were not of greater value than those designated in October. The report of the master does not cover this point. If there is any question about that, the parties may be further heard.

It appears that a small bond, mentioned in the bill, was delivered by the bankrupt to the defendant within four months prior to the bankruptcy, which bond, not being included in the transactions above referred to, may be the basis of a proper claim of a preference. The history of this bond is not perfectly clear. The master has considered that its delivery constitutes a preference. It appears to be so. The defendant, however, claims that he has not had an opportunity, under the pleadings and the course the case took, to adequately defend his position, and he may be heard further on this matter of the small bond, if so desired.