## QUEEN CITY PRINTING INK CO. v. ROCHESTER HERALD CO.

### Claim of COMMONWEALTH BANK OF NEW YORK.

#### No. 852.

District Court, W. D. New York.
Feb. 19, 1930.

Harris, Beach, Harris & Matson, of Rochester, N. Y., for receivers.

Hubbell, Taylor, Goodwin & Moser, of Rochester, N. Y., for objecting creditor, National Bank of Rochester.

Wile, Oviatt & Gilman, of Rochester, N. Y., for Commonwealth Bank.

ADLER, District Judge.

The Rochester Herald Company published for many years "The Rochester Herald," a morning newspaper in the city of Rochester, N. Y. In 1924 it was borrowing money to carry on its business. October 20, 1924, it borrowed $25,000 from the Commonwealth Bank of New York and gave its promissory note for that amount. At the same time, as security for this loan, it executed an instrument in writing assigning to the bank certain accounts on the books of the company amounting in all to $29,770.52. A list of the specific accounts assigned was affixed to the instrument. At the same time each of these accounts was stamped in the company ledger as assigned to the bank, with the figures showing the amount assigned. Thereafter, on November 24, 1924, the Herald Company borrowed an additional $15,000 from the bank and gave a note for that amount. At the time this second loan was made, it was agreed between the parties that no new written assignment was necessary. It was agreed that this second loan would be secured by the assignment of accounts receivable of the company totaling $22,330.74. At this time, as in the previous case, the assignment and the amount assigned was stamped on the page containing the specific account in the company's ledger. In each case the amount stated in figures was the amount due from the debtor at the end of the previous month. To secure the twenty-five thousand dollar loan, September accounts were assigned. To secure the fifteen thousand dollar loan, October accounts were assigned.

Receivers in equity of the Rochester Herald Company were appointed by the court on August 3, 1925. On June 10, 1926, the Commonwealth Bank filed its claim for $26,013.92 and interest, which was for the two notes with interest less payments made from time to time. In its proof of claim the bank lists certain accounts receivable of the company and claims to hold them as security for this indebtedness and that it has a valid secured claim entitled to priority in payment over general creditors. The accounts listed by the bank in its proof of claim are the same accounts assigned to the bank at the times of the two loans. The claim of the bank is that its security attaches not only to the amounts due for the September and October accounts of these various debtors, but also to the amounts due on these accounts during subsequent months.

The claim of the bank is based primarily upon an agreement which is spelled out from a conversation between the president of the Herald Company, and testified to by him alone, with officers of the bank at the time the second loan was made. It is alleged that in this conversation the written assignment of accounts was modified by an agreement between the parties to the effect that the Her-

ald Company could withdraw any part of the assigned accounts and substitute other accounts in their place. It is the claim of the bank that pursuant to this agreement, modifying the original agreement, the Rochester Herald Company substituted in place of the original accounts assigned, a large part of which the Herald Company collected and used in its business, the indebtedness of the same specific debtors for the period subsequent to the months covered by the original assignment.

In my opinion there is no evidence in the record of an agreement to substitute accounts, and no evidence whatever that accounts were actually substituted for the accounts originally assigned. The original assignment of accounts to the bank was made by an instrument carefully prepared and presented for execution by the officers of the bank that made the loan. It was not an assignment loosely drawn by men unfamiliar with the legal effect of what they were doing. Upon execution of the assignment, a rubber stamp was prepared and each account assigned by the instrument was specifically stamped upon the books as having been assigned. Thereafter, when the additional $15,000 was borrowed from the bank, and it was agreed that no new written assignment was necessary, it was also agreed that this amount would be secured by the assignment of accounts, and accounts on the books of the company totaling over $22,000 were thereupon duly stamped with a rubber stamp as having been assigned. It appears that a large amount of these accounts was collected by the Herald Company and used in its business. As I have stated, it is now claimed that other accounts were by agreement between the parties substituted in place of those that the Herald Company collected and used. That the accounts substituted were the indebtedness of the same debtors to the Herald Company which accrued during subsequent months.

This agreement of substitution of accounts is based upon the testimony of Potter, the president of the Herald Company. Potter said that when an officer of the bank agreed to allow him to go ahead and use the money, that was paid him, he called the bank officer's attention to the fact that "there was always upon the Rochester Herald Company's books enough of these accounts from the same people whose accounts he had marked upon the ledger." Potter was then asked a question: "In subsequent dealings and in making subsequent payments, how were these accounts treated that are stamped upon the books?" An objection was made and overruled, and Potter replied, "As belonging to the Bank." This is all the testimony that I can find in the record bearing upon an agreement to substitute accounts. Potter's language is vague, and it does not suggest a substitution, although he was asked to repeat his testimony on this point and did repeat it. The repetition was in slightly different language, but was equally indefinite and vague as expressing an agreement of substitution. It is significant in this connection that no testimony was given before the master on this point by either of the two officers of the bank, Arcerie or Donnelly with whom Potter said he had this conversation. They are both silent on the subject of this conversation and on the subject of the agreement for a substitution of accounts, although both were naturally available. In addition to this, the testimony shows that the Rochester Herald's subsequent dealings with these accounts were not consistent with the theory that they were assigned or substituted. Testimony as to the manner some of these accounts were subsequently handled positively negatives the testimony of Potter that they were treated as belonging to the bank. The undisputed testimony is that certain of the accounts of these same debtors were subsequently assigned by written assignment by the Rochester Herald Company to the Union Trust Company of Rochester, N. Y., to secure an entirely different indebtedness. In the case of the McCurdy Company, which was one of the accounts two months of which was originally assigned to the Commonwealth Bank, this account was subsequently assigned to the Union Trust Company not only once but almost every month between December, 1924, and the date of the receivership. The account of the Duffy-Powers Company was handled from month to month in the same way.

█ In order that there may be a substitution of accounts, it is necessary first that there must be an agreement to substitute them; but more than that, it is necessary that they should actually be substituted. Sexton v. Kessler, 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995; Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991; In re Almond-Jones Co., Inc. (D. C.) 13 F.(2d) 152; Blue v. Herkimer National Bank (C. C. A.) 30 F.(2d) 256.

In my opinion the testimony in this case does not spell out even an agreement to substitute accounts, and the testimony in this case positively negatives the proposition to

carry out such an agreement even if it was made.

Counsel for the bank further contends the bank is entitled to payment in full because the receivers sold the property of the Rochester Herald Company for $12,500 in excess of the amount necessary to pay all creditors fifty cents on the dollar. His claim is that this $12,500 was obtained by the receivers for the benefit of the bank. That therefore, and under the doctrine of the case of Lawrence v. Fox, 20 N. Y. 268, the bank is entitled to recover the $12,500, which with the fifty per cent. received as general creditors would pay the bank in full. The facts as I find them from the evidence are that at the time the sale of the Herald properties was made, the Commonwealth Bank had filed its claim alleging that it was a preferred claim. The receivers did not presume to pass upon the question of whether it was a preferred claim or not; in fact, they disallowed it as a preferred claim and put the bank to its proof. What the receivers did was to sell the property when it came time to sell it for an amount which, if the court subsequently held the bank's claim to be preferred, would be enough to pay all of the other creditors fifty per cent. of their claims. This is all they have presumed to do and this is all that they had a right to do. The receivers had no power or authority as receivers to determine the validity of the bank's claim or to collect money for the bank or for any other individual creditor. I am convinced from a careful study of the testimony that the receivers never even attempted to do such a thing, and that there is no merit to the claim of the bank that this money was collected for them.

My determination is that the assignment of accounts of the Rochester Herald Company to the Commonwealth Bank was an assignment of specific accounts for certain months duly set forth in the assignment and stamped upon the books of the company. That no other accounts except those duly stamped on the company's ledger were assigned. That except as to the proceeds of the specifically assigned and stamped accounts which have been paid over to the bank, the bank's claim is not a preferred claim. It appears that some amounts have been collected by the receivers on these specifically assigned accounts. Such amounts are payable to the bank. This matter is remitted to the special master to compute from the evidence the exact amount of the unpreferred claim of the Commonwealth Bank.