## In re VANITY FAIR SLIPPERS, Inc.

District Court, S. D. New York.
June 27, 1933.

84

Louis I. Hochstein, of New York City, for petitioner.

Bernard A. Grossman, of New York City, for trustee.

KNOX, District Judge.

Morris Wolff, the petitioner below, moved for an order directing the trustee in bankruptcy to turn over to him the proceeds of certain enumerated property and accounts to which he claimed he was entitled by virtue of a chattel mortgage and an assignment of accounts receivable executed by the now bankrupt corporation. The referee granted the motion. The trustee here seeks a reversal of this ruling.

On September 30, 1931, Wolff entered into a written agreement with the bankrupt corporation pursuant to which he loaned it $10,000. In return, the corporation gave him its noninterest-bearing promissory note due and payable December 31, 1931, in the sum of $10,400; the $400 representing a bonus for the making of the loan. As collateral security, Wolff received a chattel mortgage on the corporation's plant, which was duly filed, and an assignment of accounts receivable then on the books of the corporation, and of all future accounts that might come into being in the regular course of business. In addition, Wolff was elected a director and treasurer of the corporation, the agreement providing that he should occupy such positions until payment of the note. As treasurer, he countersigned all checks drawn on the bank account of the corporation, and had supervision and control of the corporate books of account, which contained entries of the accounts receivable assigned to him. The agreement provided that all new accounts should automatically be subjected to Wolff's

lien, that the agreement itself should operate as an assignment of all such new accounts, and that Wolff would release to the corporation, such money as was received from existing accounts, upon condition that the corporation would simultaneously assign to him new accounts, subject to his approval, of a value at least as great as those which he relinquished to the corporation.

Between September 30, 1931, and January 27, 1932, when the corporation filed a voluntary petition in bankruptcy, a quantity of merchandise was returned by customers whose accounts had previously been assigned to Wolff. Although the agreement contained no stipulation regarding this contingency, Wolff testified that such returned merchandise was intended to be covered by his lien, and that Mr. Berkow, the corporation's secretary and general manager, subsequently stated that the merchandise covered by the assigned accounts belonged to him. It appears, also, that the returned merchandise was kept segregated and apart from other merchandise in the shop, and that the only packed merchandise on hand at the time of the bankruptcy was kept separate and was not mingled in any way with returned goods.

On January 19, 1932, Wolff gave notice to all debtors of the corporation that their accounts had been assigned to him and demanded payment. A few days later, due to the imminence of bankruptcy, he severed his official connection with the corporation. Irving Trust Company was appointed receiver on January 29, 1932, and on February 6, all the property of the bankrupt was sold at auction. To facilitate liquidation of the estate, Wolff and the receiver stipulated that the plant should be sold free and clear of the chattel mortgage, that the lien of the mortgage attach to the proceeds, that the accounts receivable be collected by Wolff's attorney and held by him until the further order of the court, that the returned merchandise be sold free of whatever lien Wolff might have upon it, and that such lien attach to the proceeds.

There is no question but that Wolff actually paid $10,000 to the corporation, that the agreement and chattel mortgage were made in good faith, or that the corporation was solvent at the time the transaction took place.

The validity of the chattel mortgage, the assignment of accounts, and the lien on returned merchandise, involving different questions, will be considered separately.

First, the chattel mortgage is clearly valid under section 67d of the Bankruptcy Act (11 USCA § 107 (d), since it was executed and duly filed by the corporation, while still solvent, four months before the filing of the bankruptcy petition, and was given for good consideration without any intent to hinder, delay, or defraud creditors, Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577; In re Baar, 213 F. 628 (C. C. A. 2nd); In re Mahland (D. C.) 184 F. 743; Sprague v. Glynn, 136 Misc. 163, 238 N. Y. S. 696.

Second, the assignment of accounts receivable is valid because there was no such "reservation of dominion (by the assignor which was) inconsistent with the effective disposition of title and creation of a lien" as there was in the case of Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 567, 69 L. Ed. 991. There, the assignor "was not required to replace accounts collected by other collateral of equal value. It was not required to account in any way to Ratner." In the present case, however, the agreement specifically provided that Wolff would release to the corporation the proceeds of existing accounts only upon condition that the corporation would "simultaneously * * * assign to Wolff, in lieu and in substitution, other accounts receivable * * * which new and substituted accounts shall, at all times, be subject to the approval of Wolff, and are, in no event, to be less, in amount, than the amount of monies that Wolff may, from time to time release or relinquish. * * * "

Such control by Wolff, over the relinquishment of old accounts, and the acceptance of new accounts, effectively prevented such a reservation of unfettered dominion in the corporation as was destructive of the validity of the assignment in the case of Benedict v. Ratner, supra. In addition, the fact that Wolff was elected treasurer and a director of the corporation, and had power to name another director, and was given supervision over the corporation's books of account, as well as the right to countersign checks, precluded reservation of control of the accounts in the hands of the assignor. For these reasons the assignment of accounts receivable was valid and effective.

Finally, it must be determined if Wolff is entitled to the proceeds of the merchandise which was returned by customers whose accounts had been assigned to him. The referee held that he was, on the ground that such was the understanding of the parties, and for the further reason that, as a matter of legal principle, the goods followed the assignment of accounts.

In my view, this is not necessarily so, particularly where the rights of other persons have intervened. In finding that the returned merchandise was so identified and segregated as to constitute a delivery sufficient to consummate a pledge, the referee did not err. See Sexton v. Kessler & Co., 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995; Babcock v. Edson, 82 Misc. 144, 143 N. Y. S. 399. Nevertheless, the creation of a pledge within four months of bankruptcy may give rise to a voidable preference unless supported by an agreement therefor, which antedates the four months' period. See Sexton v. Kessler & Co., supra; In re Glover Specialties Company (D. C.) 18 F.(2d) 314. Here, the agreement did not attempt to deal with returned merchandise. Had it done so, the result might easily be different. See Lee v. State Bank & Trust Company (C. C. A.) 38 F.(2d) 45; In re Bernard & Katz (C. C. A.) 38 F.(2d) 40. If the agreement had been incomplete, its missing provisions could have been supplied by extrinsic evidence. Or, if the subject of returned merchandise had been separate and distinct from the matter about which the parties were contracting, testimony would have been admissible to establish a collateral oral agreement dealing with that subject. Since, however, the agreement was a complete and carefully written document, and since the creation of a lien on returned merchandise would have been merely an additional item of security which Wolff was to receive as consideration for his loan of $10,000, the parol evidence rule precludes resort to testimony concerning such a contemporaneous oral agreement, or to testimony as to what the parties intended but failed to express in their agreement. Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 38 L. Ed. 698; Culver v. Wilkinson, 145 U. S. 205, 12 S. Ct. 832, 36 L. Ed. 676; Loomis v. New York Cent. & H. R. R. Co., 203 N. Y. 359, 96 N. E. 748, Ann. Cas. 1913A, 928; Edison Electric Illuminating Company v. Thacher, 229 N. Y. 172, 128 N. E. 124; Thomas v. Soutt, 127 N. Y. 133, 27 N. E. 961; See Wigmore on Evidence, §§ 2430, 2431; Williston on Contracts, §§ 636–638; Richardson on Evidence (4th Ed.) § 432. It was error, therefore, for the referee to base his conclusion upon Wolff's testimony as to what was said and intended by the parties with respect to returned merchandise.

It was also error to hold that the goods followed the accounts as a matter of law. The argument that if that is not so, it is pos-

sible for a fraudulent assignor to defraud his assignee by enlisting the collusive support of his customers in returning merchandise and thus rendering the assigned accounts valueless, is by no means conclusive. If the assignee chooses to rely on the good faith of the assignor, he gets what he bargains for when he gets only the proceeds realized from accounts receivable. If he wishes the further security of a lien on returned merchandise, he can easily make that a term of the assignment agreement. That is what was done in the cases of In re Bernard & Katz, supra, and Lee v. State Bank & Trust Company, supra.

The order of the referee is reversed, with respect to the proceeds from the sale of returned merchandise. It is affirmed as to the collections of assigned accounts and the proceeds of the property covered by the chattel mortgage.