### LANE v. SCHOOL DIST. OF CITY OF MONESSEN.

### No. 7611.

Circuit Court of Appeals, Third Circuit.

May 28, 1941.

ing after two years to enjoy the income during his life, pays nothing, and has

thus saved himself $53,580 annually in taxes.

480

Robert F. Barnett, of Pittsburgh, Pa., for appellant.

G. Walter Smith, of Pittsburgh, Pa. (George D. Wick, of Pittsburgh, Pa., George H. Frich, Jr., of Monessen, Pa., and Campbell, Wick, Houck & Thomas, of Pittsburgh, Pa., on the brief), for appellee.

Before MARIS, CLARK, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The problem in this action by the receiver of an insolvent national bank against the defendant, a Pennsylvania school district, arises from the following set of facts:

The school district was a depositor in the national bank. This banking house was in Pennsylvania. The surety company which guaranteed the deposit of this public corporation pursuant to notice, withdrew its guarantee. The officers of the bank in July, 1931 agreed with the directors of the school district that the bank would pledge to the school district bonds belonging to the bank to secure the safety of the deposit. The school district's funds were left with the bank. Following repeated requests on the part of the school district officers for the security the bank's president and cashier, sometime between July and October (the date is not in evidence), went through the bank's portfolio and selected certain bonds which were to be used to carry out the agreement. The school district offices were not notified of this, however. On October 10, 1931, the representatives of the school district and the bank met together in the bank's offices and the bonds previously selected were accepted by the school district officials and by them placed in the district's safety deposit vault. It is found as a fact, by the trial court, that on this date the bank's officers knew that the bank would presently be unable to meet its obligations. The two days which followed were Sunday and a holiday, respectively. Before banking hours on the Tuesday following the directors voted to suspend the business of the bank and it was never open for business again. Subsequently, the bonds in the possession of the school district were sold by the bank's receiver with the consent of the school district officers and the approval of the court. The proceeds were used to pay off the school district in full and the balance kept by the receiver to use in liquidating the bank's affairs. Subsequently, a successor receiver brought an action against the school district to recover back the excess payments received by it over that enjoyed by unsecured depositors of the bank. The ground is that the delivery of the bonds at the time of contemplated insolvency was

void as a preference and interfered with the rateable distribution required by the statute. R.S. § 5242, 12 U.S.C.A. § 91; R.S. § 5236, 12 U.S.C.A. § 194.

The original agreement of July 10 could not constitute a pledge for several reasons. One of them is that the property to be pledged was not specified. The subsequent segregation by the bank's officers of the bonds to be delivered to the depositor could not be significant in the absence of agreement by the depositor to accept the bank's selection. So the completion of this pledge came only upon delivery of the collateral on October 10 and on that day the fact that the bank would presently be unable to meet its obligations was apparent to its officers.

The rule of property with regard to the necessary elements to create a pledge is determined by the law of Pennsylvania. But whether a pledge, completed as this one was, shortly before the failure of a national bank, is void as a preference is a matter of federal law as it involves the application of federal legislation governing national banks. Assuming that the pledge of the securities became complete only on October 10, is the series of transactions from the agreement in July to its completion in October a void preference so that the money thus paid must be returned? An authority in the negative, the facts of which raise a problem almost identical with this one, is Burrowes v. Nimocks, 4 Cir., 1929, 35 F.2d 152. The segregation of the securities to be pledged had been made to the creditor in that case and the creditor had approved of the selection. If that fact makes the case stronger for upholding the validity of the agreement, there is also the point the other way that the bank's officers were privileged to, and did, substitute items in the collection at their convenience. In both that case and this the physical delivery of the securities was very shortly before the bank closed its doors. It was held that the receiver could not get back the securities. The court acknowledged that a pledge is not good at law without delivery, but cited numerous authorities for the proposition that where delivery is made in pursuance of an earlier agreement, it relates back to the contract. The same language is repeated in Williston on Contracts, Rev.Ed., § 1042 note 18. This language, like the phrase "equitable lien", to borrow language from

Mr. Justice Holmes[1] "may not carry the reasoning further or do much more than express the opinion of the court that the facts give a priority to the party said to have it." Nevertheless it expresses in understandable form the result of a court of coordinate authority. It fits in with what the Supreme Court has done in a matter closely analogous. Sexton v. Kessler & Co., 1912, 225 U.S. 90, 32 S.Ct. 657, 56 L. Ed. 995.

The law of Pennsylvania is in accord with these holdings. In Davis v. Billings, 1916, 254 Pa. 574, 99 A. 163, 164, the facts in which are closely analogous to those sub judice, the Supreme Court of Pennsylvania said: "The fact that the property remained in the possession of Moore would not invalidate the pledge as between the parties to the contract. The only effect of retention of possession would be to make it an equitable pledge, one which in equity could be enforced between the parties and the then general creditors of the pledgor, but not against subsequent bona fide purchasers or pledgees for value." The position of the receiver of a national bank has been stated by the Supreme Court as follows: "The receiver took the assets of the Fidelity Bank as a mere trust for creditors, and not for value and without notice, and, in the absence of statute to the contrary, subject to all claims and defences that might have been interposed as against the insolvent corporation before the liens of the United States and of the general creditors attached." Scott v. Armstrong, 1892, 146 U.S. 499, 13 S.Ct. 148, 150, 36 L. Ed. 1059; Burrowes v. Nimocks, supra, 35 F.2d at page 159. This declaration of Pennsylvania law plus the authoritative statement of the position of the receiver of a national bank, brings the case within the problem presented in the Nimocks case.

The question is obviously not free from difficulty. The general legislative policy, as expressed by the statute, is for a rateable distribution among those similarly situated. And secret liens may be the source of mistaken reliance upon appearances and possible fraud. On the other hand the school directors make their bargain in good faith, and a prompt performance of the promise to them would have left their position impregnable. While it is true that the remedy was in their own hands to withdraw the deposit if the furnishing of the security was delayed, there

---

[1] In Sexton v. Kessler & Co., 1912, 225 U.S. 90, 99, 32 S.Ct. 657, 659, 56 L.Ed. 995.

was no reason to doubt the sincerity of the bank officials about the performance of their promise. We find, on the whole, no equity upon which the pledge should be declared invalid, and this closed transaction reopened.

In thus upholding the validity of the pledge transaction it becomes unnecessary to consider whether there is any basis for application of the trust theory considered by the trial court. Equally unnecessary is a discussion of the effect of the payment by the receiver who was this plaintiff's predecessor under a mistake of law or the question whether the very considerable delay constitutes laches which would preclude recovery.

The judgment is affirmed.