In re AMERICAN CREAMERIES.

No. 2188.

United States District Court
S. D. Texas, Houston Division.

Feb. 27, 1950.

Supplemental Opinion May 8, 1950.

Fulbright, Crooker, Freeman & Bates (Thad Grundy), of Houston, Texas, for Second National Bank of Houston.

Paul Strong, of Houston, Texas, for the Trustee in Bankruptcy.

KENNERLY, Chief Judge.

This is a hearing on the Petition of the Second National Bank of Houston (called Intervenor) to Review an Order herein of the Referee in Bankruptcy.

The Bankrupt, American Creameries, a Texas corporation, on or about May 6, 1948, executed to the Intervenor its Promissory Note in the sum of $30,000, assigning to Intervenor certain Accounts Receivable as security for such Note. The Referee has held such Assignment to be void, or if not void that Intervenor has waived same, and has adjudged that Intervenor is not entitled to recover from the Trustee any of the proceeds of the collection by the Trustee of such Accounts. The Referee has also held to be a Preference under the Bankruptcy Act, 11 U.S. C.A. § 1 et seq., the proceeds of the collection of such Accounts in the hands of Intervenor and amounting to $4511.44 and credited by Intervenor on Bankrupt's indebtedness to it.

■ The Referee's Findings of Fact, which must be upheld unless clearly erroneous, Phillips v. Baker, 5 Cir., 165 F. 2d 578, are as follows:—

"Intervener loaned the Bankrupt $30,-000.00 on May 6, 1948, and took a note payable in monthly installments, secured by deed of trust of even date on Lots 8–12, inclusive, of Block A, and the improvements thereon, in Mineola, Wood County, Texas, appraised at $56,000.00, and such loan was further secured by a written agreement of collateral assignment of the Bankrupt's accounts receivable, also of even date therewith.

"The Bankrupt delivered to Intervener lists of all its unpaid accounts receivable on May 6, as aforesaid, June 10, August 18, September 22, October 20, November 10, and November 16, all in 1946, each list containing words of assignment and referring to said collateral assignment agreement of May 6, 1948.

"Adjudication of bankruptcy herein was on November 26, 1948.

"The intervener permitted the Bankrupt to collect, to commingle with the bank-

rupt's other funds in its checking account in the intervener bank all of the proceeds from the assigned accounts receivable, no accounting therefor being required by intervener and such proceeds not being required to be kept in a trust account as provided for in the agreement of assignment, the bankrupt having the unfettered use of all of the proceeds of the assigned accounts in the regular and usual course of the bankrupt's business, except for the following payments made on said note, which payments aggregate .0084% of the total proceeds (Exceeding $400,000.00) collected:

| Amount of Principal Installments on note. | Date Due | Amount paid on Prin. Install. | Date Paid |
|---|---|---|---|
| $1000.00 | 7-1-48 | $1000.00 | 7-3-48 |
| $1500.00 | 8-1-48 | 1500.00 | 8-23-48 |
| $1750.00 | 9-1-48 | 500.00 | 9-1-48 |
| $2000.00 | 10-1-48 | 487.50 | 10-2-48 |
| $1000.00 | 11-1-48 | | |
| $7250.00 | | $3487.50 | |

"The intervener was fully aware of the use being made by the bankrupt of the proceeds from the assigned accounts receivable. Although the bankrupt's ledger sheets were stamped showing that the accounts had been assigned to intervener, and intervener checked the bankrupt's books regularly, actual notice of the assignment of the accounts receivable was not given to debtors until the intervener directed the bankrupt to do so on November 16, 1948, ten days before the adjudication of bankruptcy. The only other notice was a general notice of assignment filed with the County Clerk of Harris County, Texas, on July 8, 1946, in an effort to comply with Article 260—1 of Vernon's Annotated Texas Statutes, filed as a part of a different transaction almost two years before the one in question and long before any of the assigned accounts came into being.

"Between November 18, 1948, and November 24, 1948, at the instance of the intervener the officials of the bankrupt turned over to intervener the sum of $3,-457.48 in proceeds from the assigned accounts receivable, which sum was placed in a special account, wherein later was also placed the additional sum of $1,053.96 collected by the intervener on the assigned accounts after November 26, 1948, the date of bankruptcy, making a total of $4,511.44 in said special account. At the time of receiving all of said sums which went into said Special Account, the intervener had reasonable cause to believe that the bankrupt was then insolvent. On December 14, 1948, after the date of bankruptcy with full knowledge thereof, the intervener applied said sum of $4,511.44 in partial payment of said $30,000.00 note.

"Since his appointment herein, the Trustee has collected the sum of $5,756.17 on accounts which were allegedly assigned to the intervener."

I:—The first question is whether such Assignment is or is not void. The Referee's Conclusion of Law is as follows:— "All of said assignment of Accounts Receivable from the Bankrupt to the Intervener were in law fraudulent conveyances as to creditors under the doctrine of Benedict v. Ratner, 268 U.S. 353, [45 S.Ct. 566, 69 L.Ed. 991], and Re O'Neal [Furniture Co.], 3 F.Supp. 108, 109, decided by this Court."

Clearly the Referee does not mean actual fraud, but legal fraud. As in Benedict v. Ratner, supra, no actual fraud is shown. The Referee was doubtless impressed with the similarity between the facts in that case and those found by the Referee to exist here. But there must also be considered Sexton v. Kessler & Co., 225 U.S. 90, 95, 32 S.Ct. 657, 56 L. Ed. 995, and the language of Judge Bryan

in Coppard v. Martin, 5 Cir., 15 F.2d 743, 745, in which he distinguishes the two cases.[1] The Referee also cites In re O'Neal Furniture Co., 3 Fed.Supp. 108 and 109 (two cases), which, citing Benedict v. Ratner and Coppard v. Martin, were affirmed by the Circuit Court of Appeals, 5 Cir., 68 F.2d 566.

Intervener cites cases[2] which throw some, but not much, light on the subject. The Trustee cites cases[3] some of which are helpful.

In Benedict v. Ratner, supra, it is said:—

"On the other hand, if the agreement is that the mortgagor may sell and use the proceeds for his own benefit, the mortgage is of no effect although recorded. Seeming ownership exists in both classes of cases because the mortgagor is permitted to remain in possession of the stock in trade and to sell it freely. But it is only where the unrestricted dominion over the proceeds is reserved to the mortgagor that the mortgage is void. This dominion is the differentiating and deciding element. The distinction was recognized in Sexton v. Kessler & Co., 225 U.S. 90, 98, 32 S. Ct. 657, 56 L.Ed. 995, where a transfer of securities was sustained. It was pointed out that a reservation of full control by the mortgagor might well prevent the effective creation of a lien in the mortgagee and that the New York cases holding such a mortgage void rest upon that doctrine.

"The results which flow from reserving dominion inconsistent with the effective disposition of title must be the same whatever the nature of the property transferred. The doctrine which imputes fraud where full dominion is reserved must apply to assignments of accounts although the doctrine of ostensible ownership does not. There must also be the same distinction as to degrees of dominion. Thus, although an agreement that the assignor of accounts shall collect them and pay the proceeds to the assignee will not invalidate the assignment which it accompanies, the assignment must be deemed fraudulent in law if it is agreed that the assignor may

1. Judge Bryan said (italics mine):—

"The corporation attempted to make a present assignment of money to be received in the future. If that assignment was valid, Martin had an equitable right to the money as soon as it was paid, because of the doctrine that equity regards as done that which ought to be done. Bank of Oakman v. Union Coal Co., 5 Cir., 15 F.2d 360 (present term). And that right related back to the date of his contract. Sexton v. Kessler & Co., 225 U.S. 90, 32 S.Ct. 657, 56 L.Ed. 995. *We are of opinion that a valid lien was created. The pledge of accounts receivable of a mercantile business creates a lien, though such accounts be retained and collected by the pledgor, and substitutions of future accounts be authorized.* Van Iderstine v. National Discount Co., 227 U.S. 575, 33 S.Ct. 343, 57 L.Ed. 652; Sexton v. Kessler & Co., supra.

"*However, if the pledgor is not required to make substitutions, but is authorized to use the proceeds of accounts as he sees fit, no lien exists.* Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991. A pledge of accounts receivable being sufficient to create a lien, we think it must follow by analogy that a pledge of money received from the sale of goods is also sufficient for that purpose, for the principle is the same. The necessity of surrender of dominion by the pledgor applies to tangible property, but it does not apply to a pledge of indebtedness. See Young v. Upson, C.C., 115 F. 192, cited with approval by the Supreme Court in Benedict v. Ratner, supra. Consequently, article 4000, Texas Revised Civil Statutes [Vernon's Ann.Civ.St. art. 4000], which in effect makes void a lien upon a stock of goods exposed for sale in the regular course of business, where possession and control remain in the owner of the goods, has no application to the pledge of accounts receivable or proceeds from the sale of goods."

2. Clark v. Iselin, 21 Wall. 360, 22 L.Ed. 568; Chapman v. Hunt, 2 Cir., 254 F. 768; New York-Brooklyn Fuel Corp. v. Fuller, 2 Cir., 11 F.2d 802; Lindsay v. Rickenbacker, 5 Cir., 116 F.2d 29.

3. Central Nat. Bank v. Latham & Co., Tex.Civ.App., 22 S.W.2d 765, Writ Ref.; Adoue & Lobit v. H. Seeligson & Co., 54 Tex. 593; Southern Surety Co. v. Bering Mfg. Co., Tex.Civ.App., 295 S.W. 337; Wilson v. Poland, Tex.Civ.App., 14 S.W.2d 890; Mitchell v. Scott, Tex.Civ. App., 14 S.W.2d 916; Re Borok, 2 Cir., 50 F.2d 75; Blue v. Herkimer National Bank, 2 Cir., 30 F.2d 256.

use the proceeds as he sees fit." [268 U. S. 353, 45 S.Ct. 569]

■ A review of the cases convinces me that under the facts as found by the Referee, Benedict v. Ratner is controlling and that the Referee did not err in holding such Assignment to be void, and did not err in refusing to order the Trustee to turn over to Intervenor the proceeds of the collection of such accounts.

2:—The Referee also concludes that:— "By its actions, the intervener waived its lien on all the assigned accounts receivable."

Since I hold that such Assignment is void and that Intervenor has no lien, it is unnecessary to discuss this point. I incline to the view, however, that if such Assignment is valid, the Intervenor has not waived its lien.

3:—The question of the effect or validity of such Assignment under the Texas Statutes (Article 260—1, Vernon's Annotated Texas Statutes) was correctly disposed of by the Referee in view of the Referee's Finding of Fact that the notice filed with the County Clerk of Harris County July 8, 1946, was filed as a part of an entirely different and prior transaction between the parties.

4:—Another of the Referee's Conclusions of Law is as follows:—"The action of the Bankrupt and intervener in turning over to the intervener, who received the same, between November 18, 1948, and November 23, 1948, the said sum of $3,457.-48, the proceeds of assigned accounts and the action of the intervener thereafter in applying said sum together with the sum of $1,053.96, also proceeds of said accounts collected after bankruptcy, aggregating the sum of $4,511.44 in partial payment of intervener's debt on December 14, 1948, after bankruptcy, constituted a preference, which the Trustee is entitled to have voided."

■ If the Assignment is valid it is plain that this view is not meritorious and that Intervenor has a lien on such accounts and there is no preference under the Bankruptcy Act. But if, as I hold, such Assignment is void, then under the Facts as found by the Referee, the payments of such sums, aggregating $4,511.44, to Intervenor constitute a preference, and the Referee was right in allowing the Trustee to recover same.

The Referee was right also in this Conclusion of Law:—"The intervener is not entitled to set off its debt against said sum of $4,511.44, the proceeds of assigned accounts receivable, received by it aforesaid."

The Referee was right also in the following Conclusion of Law:—"The Trustee under the provisions of Section 110 of Title 11, of U.S.C.A., on the date of bankruptcy, has and still has a lien on and against and title to all of the accounts receivable on the bankrupt and the proceeds thereof in its hands or the hands of the intervener herein."

An Order will enter, affirming in all respects the action of the Referee.

5:—Intervenor presses the claim that:— "The Referee erred * * * in permitting counsel for the Trustee to file a trial amendment alleging that said assignments were fraudulent conveyances, such amendment having been requested for the first time during the closing argument of counsel for Intervenor and being wholly without support in the evidence."

The Referee's statement with respect to such hearing is as follows:—"And thereafter came said intervener and Trustee by their respective attorneys of record and announced ready for the hearing, whereupon said pleadings were stated to the Referee, the intervener introduced its evidence until it had rested, the Trustee introduced his evidence until he had rested; the attorney for intervener made his opening argument, the attorney for the Trustee made his argument, followed by the closing argument by the attorney for the Intervener, during the course of which the Trustee requested and was granted the right to file a Trial Amendment to his Answer and Counter-claim over the objections of intervener, which were overruled, and said Trial Amendment filed herein on August 2, 1949, and said matter having continued from day to day until

the date of this order and judgment, the Referee is of the opinion and finds that the law and the facts are with the Trustee."

■ The action of the Referee in granting leave to file Trial Amendment was procedural and within the sound discretion of the Referee. I do not think the Referee abused his discretion.

Besides, neither in the Intervener's Petition for Review nor in its brief in support thereof does it show in what way, if any, it was harmed by the filing of the Trial Amendment. Apparently it was not. Its attitude and complaint are reflected by the following from its brief:— "The Referee erred, and he erred grievously, in permitting a case to be tried before him on one theory and decided by him on another—in rendering a judgment that conforms neither to the pleadings nor to the proof. In fairness to our client and to our profession itself, we can do no less than cry out in protest against such an arbitrary and capricious ruling, no matter from whence it comes."

However, to be sure that no injustice has been or is being done to Intervenor, the Order affirming the action of the Referee will not enter for ten days after the filing of this Opinion with the Clerk. During that time, Intervenor may indicate, by Motion or Statement filed with the Clerk, the manner in which it was harmed or injured and what, if any, additional evidence it desires to offer or what, if

any, additional action it desires to take. When so filed, same will receive my consideration.

### Supplemental Opinion

This Opinion supplements Opinion filed February 27, 1950.

1:— Intervenor (Second National Bank of Houston) in its Petition to Review the Order of the Referee respecting Intervenor's Claim in this Estate complained of the action of the Referee in allowing the Trustee in Bankruptcy to file a Trial Amendment during the argument before the Referee. After holding that such matter was in the sound discretion of the Referee, etc., it was said that Intervenor would be allowed to file and there would be considered any Statement or Pleading, etc. the Intervenor desired to file, offering additional evidence, etc.[1]

Thereupon the Intervenor on March 9, 1950, filed a pleading in which it stated in effect that the error of the Referee in allowing the filing of the Trial Amendment cannot be cured by the introduction of additional evidence,[2] etc.

■ I adhere to my original Opinion that the Referee did not err in allowing such Trial Amendment to be filed.

■ 2:— The Referee found and held that the filing on July 8, 1946, under Article 260—1 of Vernon's Annotated Texas Statutes, of a previous Assignment from the Bankrupt to Intervenor, while legal, would

---

1. That portion of the Opinion is as follows:—

"However, to be sure that no injustice has been or is being done to Intervenor, the Order affirming the action of the Referee will not enter for ten days after the filing of this Opinion with the Clerk. During that time, Intervenor may indicate, by Motion or Statement filed with the Clerk, the manner in which it was harmed or injured and what, if any, additional evidence it desires to offer or what, if any, additional action it desires to take. When so filed, same will receive my consideration."

2. The Statement of Intervenor is as follows:—

"The trial amendment which the Referee permitted the Trustee to file during the argument of this cause is entirely without support in the evidence and can therefore form no basis for an order of the Referee. Briefly stated, the Intervenor's position on this point is that, since there is no evidence to support it, the trial amendment should not have been allowed, and that no evidence offered by Intervenor can alter this situation. Therefore, the error of the Referee in permitting this trial amendment is not one that can be cured by the introduction of any further testimony by Intervenor."

not be a filing of the Assignment of May 6, 1948,[3] etc. In the pleading of Intervenor of March 9, 1950, it asked that additional evidence be heard on that point. A Stipulation between Intervenor and the Trustee was filed and additional testimony heard. While it is clear that some of the indebtedness embraced in the Note and Assignment of May 6, 1948, was a balance of the indebtedness secured by the previous Assignment which was filed July 8, 1946, in the office of the County Clerk, I am unwilling to disturb the finding of the Referee that the Assignment of May 6, 1948, was a new and different transaction.

3:— Neither do I think the Stipulation and additional testimony permit or require me to disturb the findings of the Referee in other respects.

4:— Intervenor complains of the action of the Referee in refusing on December 5, 1949, to allow it to file Amended Claim. Such Amended Claim was tendered for filing after the entry on September 26, 1949, of the Order of the Referee which Intervenor seeks to have reviewed and after the filing on October 6, 1949, of Intervenor's Petition for Review. The Referee was probably right in refusing to allow the filing of such Amended Claim at that time. But nevertheless the Order of the Referee is affirmed with directions to the Referee to allow the filing of such Amended Claim and to give further consideration to the question, but only the question, of the exact amount legally owing to Intervenor, to the end that Intervenor's claim may be finally allowed for that amount.

5:— As the Record now stands, I think the Referee was right in what is said in the last paragraph of his Order of September 26, 1949, with respect to Intervenor exhausting its remedies as against the Wood County property, but that question seems unimportant at this time.

3. The Finding of the Referee is as follows: "The only other notice was a general notice of assignment filed with the County Clerk of Harris County, Texas, on July 8, 1946, in an effort to comply with Article 260-1 of Vernon's Annotated Texas Statutes, filed as a part of a different transaction almost two years before the one in question and long before any of the assigned accounts came into being."

The Order of the Referee is affirmed. Let appropriate Decree, drawn in accordance with the Original Opinion and this Supplemental Opinion, be presented.