In re ROSEN et al.

No. 9187.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 18, 1946.

Decided Nov. 19, 1946.

Louis Kraemer, of Newark, N. J. (Furst & Furst, of Newark, N. J., on the brief), for appellant.

Max L. Rosenstein, of Newark, N. J., for appellee.

Alan V. Lowenstein, of Newark, N. J., and Milton P. Kupfer, of New York City, for amicus curiae.

· Before ALBERT LEE STEPHENS, GOODRICH, and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the much discussed subject [1] of the effect of an assignment of book accounts when the assignor has subsequently become a bankrupt. The assignor did business in New Jersey with New Jersey customers. Forty-four assignments are involved, all made to one assignee, Standard Factors Corporation. The debtors were not notified until November 18, 1942. The assignor was declared a bankrupt on November 23, 1942. The trustee claims that under Section 60, sub. a of the Bankruptcy Act, as amended in 1938,[2] the assignments may be avoided as preferences. The District Court decided to the contrary and the trustee appeals.

We have had the question before. In re Quaker City Sheet Metal Company, 3 Cir., 1942, 129 F.2d 894, affirmed in Corn Exchange National Bank & Trust Co. et al. v. Klauder, 1943, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189. In affirming this Court the Supreme Court held that the command of Section 60, sub. a, is to test the effectiveness of the transfer, as against the trustee by the standards which applicable state law will enforce against a good faith purchaser.[3] The trustee won and the assignee lost in that litigation because we found, and the Supreme Court accepted our finding, that the applicable state law, Pennsylvania, at that time gave to a subsequent good faith assignee, who gave notice, a right superior to the first assignee.[4] The rule is, therefore, clear to this extent, that we determine the efficacy of the transfer against the trustee under Section 60, sub. a, by the applicable state law.[5]

Before we turn to state decisions or statutes to discover the applicable state law we must, of course, decide which state law is applicable to the instant case. The initial problem is the one mentioned by the Supreme Court in the Klauder case [318 U.S. 434, 63 S.Ct. 683] where it was stated that "* * * is it true that conflicts and confusion may result where the transaction or location of the parties is of such a nature that doubt arises as to which of different state laws is applicable." [6] In the present case the assignor and assignee agreed upon the terms by which credit was to be extended and incorporated those terms into a written contract. That contract provided in its twenty-fifth paragraph that the agreement should not become effective until accepted by the assignee in Philadelphia, Pennsylvania. It was so accepted. The twenty-first para-

---

[1] Glenn, the Chandler Act and the Trustee as a Bona Fide Purchaser: A Supplementary Note (1939) 25 Va.L.Rev. 885; Hamilton, The Effect of Section Sixty of the Bankruptcy Act upon Assignments of Accounts Receivable (1940) 26 Va.L.Rev. 168; Hanna, Some Unsolved Problems under Section 60A of the Bankruptcy Act (1943) 43 Col.L. Rev. 58; Kupfer & Livingston, Corn Exchange National Bank and Trust Company v. Klauder Revisited: The Aftermath of Its Implications (1946) 32 Va.L.Rev. 910; Mulder, Ambiguities in the Chandler Act (1940) 89 U. of Pa.L. Rev. 10; Neuhoff, Assignment of Accounts Receivable as Affected by the Chandler Act (1940) 34 Ill.L.Rev. 538.

[2] 52 Stat. 840, Act June 22, 1938, 11 U.S.C.A. § 96, sub. a.

[3] 1943, 318 U.S. 434, 436, 63 S.Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189.

[4] The Pennsylvania law has since been changed by statute providing that notice of the assignment on the assignor's books will protect the assignee. Act of July 31, 1941, P.L. 606, § 1, 69 P.S. § 561.

[5] This direction of the Klauder case has been reiterated in McKenzie v. Irving Trust Co., 1945, 323 U.S. 365, 370, 65 S.Ct. 405, 89 L.Ed. 305.

[6] 1943, 318 U.S. 434, 441, 63 S.Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189.

graph also contained the provision that the agreement and "all transactions, assignments and transfers hereunder, and all rights of the parties, shall be governed as to validity, construction, enforcement, and in all other respects by the laws of the State of Pennsylvania."

No reason appears why this paragraph was inserted. The parties surely could not have been attempting to create for themselves difficult conflict of laws problems. Furthermore, the law of Pennsylvania, as we found it to be in the Quaker City case, was not such as to bring sweet repose to an assignee who had not notified a debtor of the assignment.

■ While the provisions quoted have possibilities of great difficulty we think we do not have to face those difficulties in this case. The agreement from which the quotation was made was one for the subsequent assignment of accounts receivable. It provided the terms which should govern the parties, how each advance was to be made, method of collection, etc. But nothing was assigned by this contract. The accounts were not, at the time, even in existence. They were to arise when the assignor sold goods to his customers. The assignor lives and did business in New Jersey; so did his customers. Their accounts were payable at the assignor's New Jersey place of business and the assignor deposited the money in a New Jersey bank. From time to time the assignor assigned these accounts to Standard Factors Corporation. So we distinguish here between

the general agreement to assign claims which would subsequently arise and the actual transaction of assignment. The validity of the contract to assign is not here in question. What is here involved is the effect of the actual assignment. This took place in New Jersey and, by the usual conflict of laws rule, is determined by New Jersey law.[7] The distinction just made has come up many times in cases involving the transfer of land and the distinction is pretty well marked out between the rule of reference which has to do with the contract to convey and that which is looked to in order to determine the effect of the conveyance itself.[8]

The District Court discussed the cases and reached its conclusion on the basis of New Jersey law. In presenting the case to this Court the parties have made most of their argument on the New Jersey authorities. We are deciding the case on New Jersey law also, the reason being that on the conflict of laws question we think this is the proper reference. In making it we do not need to decide whether this conflict of laws question must be resolved by state law or not.[9] We think probably not; we believe it to be a question for our own determination since we are engaged in the general problem of applying a federal statute. But, in either event, the distinction we have talked about in the paragraphs above so far as it has appeared at all, is recognized in the New Jersey cases.[10]

We come then to the measure of the

---

[7] The Referee arrived at this conclusion also, and stated in his memorandum, contained in appendix to Appellant's brief, that:

"It was urged on behalf of Standard Factors Corporation that the validity of their assignments should be determined by the laws of Pennsylvania, because the agreement between Standard Factors Corporation and the bankrupts provided that it should be governed in all respects by the laws of Pennsylvania. But the provision is binding only on the parties to the contract. Moreover, the accounts that were assigned grew out of dealings between the bankrupts and their customers, all New Jersey parties. The contracts between these parties were made in New Jersey and were to be performed in New Jersey. It is the law of

the place of performance of the *assigned* contract or account that determines which of successive assignees is entitled to the account. (Restatement of Conflict of Laws, Sections 353, 354, 356). The rights of the Trustee in Bankruptcy as against Standard Factors Corporation are to be determined by the laws of New Jersey and Section 60-a of the Bankruptcy Act."

[8] Goodrich, Two States and Real Estate (1941) 89 U. of Pa.L.Rev. 417.

[9] This point is left open in McKenzie v. Irving Trust Co., 1945, 323 U.S. 365, 371, n. 2, 65 S.Ct. 405, 89 L.Ed. 305.

[10] Engelhard v. Schroeder, 1921, 92 N. J.Eq. 663, 666, 116 A. 717, 719, 21 A.L. R. 957 ("The second ground of appeal is that the assignment to Mrs. Schroeder of the accounts is void. The assignment

non-notifying assignee's rights under New Jersey law.

■ The first step is clear. Vice Chancellor Emery in Jenkinson v. New York Finance Co.[11] discussed the prior New Jersey cases with great thoroughness, likewise the English decisions beginning with Dearle v. Hall.[12] He came to the conclusion that "notice by a prior assignee to the trustee is necessary in order to protect him against a subsequent assignee who is a purchaser for value in good faith and without notice." In other words, he followed the English rule and did so following an analysis of prior New Jersey decisions which convinced him that the matter was res nova in his state. That, we think, is sufficient evidence of New Jersey law for a federal court so long as the decision remains in force.[13]

The second step is equally clear. It is the superseding of the Jenkinson case by the decision in Moorestown Trust Co. v. Buzby.[14] The court posed the question whether, as between successive assignees of the same chose in action, prior notice

to the debtor of the later assignment, without more, subordinates the rights of the earlier to those of the later assignee. The answer given was no. Authorities relied on were Salem Trust Co. v. Manufacturers' Finance Company et al., 1924, 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867,[15] and Restatement, Contracts (1932) § 173.

This Section of the Restatement protects the first assignee, in general, but permits the second assignee to keep what he has obtained if he secures payment of the claim, judgment against the debtor, a novation or the possession of a tangible token or title document.[16] As shown in the New Jersey Annotations to the Contracts Restatement, there is some doubt whether these qualifications of the first assignee's rights are recognized in New Jersey.[17] If so, that is additional support for the proposition we set out below.

At this point it will be helpful to consider our New Jersey decisions along with the federal statute, to see just what it is that we are trying to find out from the state

---

was made in New York state and is governed by the law of that state. * * * ").

[11] Ch.1911, 79 N.J.Eq. 247, 82 A. 36.

[12] 3 Russell 1, 38 Eng.Rep. (Full Reprint) (1827).

[13] Fidelity Union Trust Co. et al. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109.

[14] Ch.1932, 109 N.J.Eq. 409, 157 A. 663.

[15] As to the authority of this decision now as to "general" law see Corn Exchange Nat. Bank & Trust Co. v. Klauder, 1943, 318 U.S. 434, 437, n. 8, 63 S. Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189.

[16] Restatement, Contracts (1932) § 173.

"§ 173. Priorities Between Successive Assignments of the Same Right.

"Where the obligee or an assignee makes two or more successive assignments of the same right, each of which would have been effective if it were the only assignment, the respective rights of the several assignees are determined by the following rules:

"(a) A subsequent assignee acquires a right against the obligor to the exclusion of a prior assignee if the prior assignment is revocable or voidable by the assignor;

"(b) Any assignee who purchases his

assignment for value in good faith without notice of a prior assignment, and who obtains

"(i) payment or satisfaction of the obligor's duty, or

"(ii) judgment against the obligor, or

"(iii) a new contract with the obligor by means of a novation, or

"(iv) delivery of a tangible token or writing, surrender of which is required by the obligor's contract for its enforcement,

can retain any performance so received and can enforce any judgment or novation so acquired, and, if he has obtained a token or writing as stated in subclause (iv), can enforce against the obligor the assigned right;

"(c) Except as stated in Clauses (a) and (b), a prior assignee is entitled to the exclusion of a subsequent assignee to the assigned right and its proceeds."

[17] See the dictum in Executors of Luse v. Parke, 1864, 17 N.J.Eq. 415, that the first assignee prevails even though the second is paid. The annotator cites Emley v. Perrine, 1896, 58 N.J.L. 472, 33 A. 951, as contra subclause (iv). But the tangible evidence of the claim there was a non-negotiable note. One may doubt whether such an instrument comes within the provision of that subclause.

law. Our question is the time at which these assignments became effective. If it was when they were made, they escape the charge of being avoidable preferences under Section 60, sub. a.[18] If not, the trustee wins and the assignee loses. The relevant language of the statute on this point is: "A transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, * * *."

■ We need not worry about creditors; they cannot, under New Jersey decisions, acquire rights superior to the assignee.[19] The Moorestown decision seems to go the whole way in holding that the second assignee, though a bona fide purchaser, does not either.

■ However the Moorestown decision does cite the Restatement and it is argued that the Vice Chancellor accepted, as the law of New Jersey, the qualifications upon the first assignee's rights there expressed. Without accepting this as a conclusion, suppose we assume that he did. Are the limitations imposed on the first assignee and the rights acquired by the second, due to the latter's position as a "bona-fide purchaser"? We think not. His rights as bona fide purchaser are not good against the first assignee, under the decision in the Moorestown case.

But people with rights may lose them by subsequent events not connected with the original acquisition. Thus the assignee, under all the various rules of different courts, will lose his rights against a debtor who pays the creditor without knowledge of the assignment.[20] The new event has changed the situation. It would now be unfair to let the assignee make the debtor pay twice, although as between assignor and assignee, the latter may be entitled to the proceeds. So in the instances given in Section 173, events taking place after the two assignments have changed the situation between the first and second assignee. The courts allow the latter to keep what he has reduced to possession. This is not by reason of his later assignment, but by reason of what he has done following it. The situation is changed. There are various ways in which this can be described in terms of legal doctrine. One can say that the rights of an assignee are equitable (as they no doubt once were) and that the man who has changed his equitable right into legal title prevails, equities being equal. Or one can draw the analogy of reduction to possession, like sinking the harpoon into the still active whale. Or one may speak of estoppel, though this simply labels a result for the elements of an estoppel en pais are not present. However explained, the favored position acquired by the subsequent assignee in the situations noted in Restatement, Contracts (1932) § 173, comes not from his status as bona fide purchaser, but from his activities following his belated assignment.

We therefore do not think it matters whether the New Jersey courts have adopted the Massachusetts rule as shown in the

[18] 52 Stat. 840, 869, 11 U.S.C.A. § 96, sub. a.
"Sec. 60. Preferred Creditors (a). A preference is a transfer, as defined in this act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, or of the original petition under chapter 10, 11, 12, or 13 of this act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. For the purposes of subdivisions a and b of this section, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy or of the original petition under chapter 10, 11, 12 or 13 of this act, it shall be deemed to have been made immediately before bankruptcy."

[19] Cogan v. Conover Manufacturing Co., Ch.1905, 69 N.J.Eq. 358, at page 372, 60 A. 408, at page 414.

[20] 2 Williston, Contracts (Rev.Ed. 1936) §§ 434, 435.

Restatement, or would go the whole way to the New York rule. In neither case does the second assignee hold the rights by virtue of being a bona fide purchaser.

This conclusion seems to bear out the view of various commentators writing on the subject as a bankruptcy matter.[21] We are not deciding the case on this broad ground however. We are putting it, as we have been instructed to do, on the state law test as incorporated by the Supreme Court's interpretation of Section 60, sub. a. We need therefore express no opinion either way regarding the decision in In re Vardaman Shoe Co.[22] which involved Missouri and Illinois law. We agree with the District Court in the conclusion reached upon the application of the law of the State of New Jersey.

Affirmed.

---

[21] 3 Collier, Bankruptcy (14th ed. 1946) § 60.40; 2 Glenn, Fraudulent Conveyances and Preferences (Rev.Ed.1940) §§ 486, 488; Glenn, The Chandler Act and the Trustee as a Bona Fide Purchaser: A Supplementary Note (1939) 25 Va.L.Rev. 885.

[22] E.D.Mo.1943, 52 F.Supp. 562.