In re QUALITY REDI–MIX, INC., a Michigan Corporation, Bankrupt.

HILLSDALE COUNTY NATIONAL BANK, a National Banking Association, Plaintiff,

v.

Alvan F. UHLE, Trustee in Bankruptcy, Defendant.

Bankruptcy No. NK 79–00044 B 9.

United States Bankruptcy Court, W. D. Michigan.

April 2, 1981.

Howard C. Stross, Jonesville, Mich., for plaintiff.

Richard C. Walsh, Kalamazoo, Mich., for defendant.

OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

Plaintiff Hillsdale County National Bank (hereafter Hillsdale Bank) brought this action against Alvan F. Uhle, the duly ap-

pointed and qualified Trustee in Bankruptcy, for the bankrupt Quality Redi-Mix, Inc. (hereafter the debtor), to have the trustee abandon the estate's claim against proceeds from the sale of two cement mixers. The proceeds, amounting to $25,000.00, had been deposited in an interest-bearing savings account. The trustee agreed that Hillsdale Bank was entitled to $15,000.00 plus interest; however, the trustee claimed the remaining amount attributable to the sale of the 1972 Diamond Reo mixer truck. The trustee asserted that Hillsdale Bank's lien on the Reo mixer was unperfected, or perfected within four months of the Bankruptcy and a voidable preference.

The trustee and Hillsdale Bank submitted this case to the Court on an agreed stipulation of fact on January 17, 1980. An amended stipulation was submitted June 3, 1980. The case was reopened for proofs on the issue of debtor's insolvency on February 13, 1981, at which time the debtor's President, Jesse A. Bumpus, testified. Both trustee and Hillsdale Bank have submitted briefs.

The original stipulation reads:

"1. On February 11, 1976, Quality Redi-Mix, Inc., bankrupt, entered into a security agreement, as debtor, with the Hillsdale County National Bank, as creditor.

"2. Among the items listed as collateral within the Agreement, due August 11, 1976, was one (1) 1972 Diamond Reo Mixer truck. The Reo Mixer and other items of collateral were listed on a financing statement that was filed on February 13, 1976 at the Hillsdale County Register of Deeds Office and February 12, 1976 with the State of Michigan. The remaining contest is relative to the Reo Mixer only as appears from the pleadings.

"3. On February 22, 1977, the Debtor obtained a "rewrite" or extension for date of payment of the initial loan with the creditor, the Hillsdale County National Bank, hereinafter designated as 'Bank', listing the same items as collateral, including the Reo Mixer. This loan was renewed September 8, 1977 and was to expire November 1977. It was extended on December 30, 1978 to expire on April 30, 1978. (sic)

"4. In all cases the same items of collateral were listed as in the original loan and as on the financing statements.

"5. On the reverse side of the Vehicle Certificate of Title, which was filed May 4, 1972, the Bank was named as a secured party.

"6. The first actual notice that the Bankrupt may not continue with its business which was communicated to the Bank was on June 27, 1978.

"7. On June 27, 1978, the then attorney for the now Bankrupt, Albert Neukom, mailed to the Bank a letter indicating that the Bank would receive monthly payments of $1,000.00, if the Bank would approve of the leasing of the Debtor's (now bankrupt) two cement mixers (a Ford and a Diamond Reo) listed as collateral on the loans with the Bank. See exhibit A attach(e)d to this stipulation and thereby made a part hereof.

"8. Subsequent to the above mentioned letter, an undated notice was received by the Bank, prior to September 20, 1978. Attached to this Stipulation is a copy of such notice labeled Exhibit B and thereby made a part hereof. The Notice sent to all creditors and declared that the now Bankrupt was insolvent (its assets estimated at approximately $50,-052.00 and its liabilities estimated at approximatley $63,832.00) and asking the cooperation of its creditors in an attempt to avoid Bankruptcy proceedings. This letter specifically named the Hillsdale County National Bank as the holder of a first lien on the two mixer trucks (one being the one in issue herein, the Diamond Reo) and distinguished the cement mixers from other assets with unsecured claims.

"9. In accordance with the Bank's standard procedure, the Bank perfected all the items listed as collateral on the note that expired in late April 1978, with the exception of the Reo Mixer. For an unknown reason the Vehicle Certificate

of Title for the Reo Mixer was not filed until September 20, 1978, after the other items had been perfected. However, the Vehicle Certificate of Title of the Reo Mixer Truck, which was initially filed May 4, 1972, had noted on the reverse side thereof that the Hillsdale County National Bank was the named secured party regarding said vehicle.

"10. On January 15, 1979, an unsecured creditor of the Bankrupt (the Aetna Cement Corp.) filed a Petition for involuntary bankruptcy with this Court.

"11. The Reo Mixer truck, pursuant to this Court's Order and after Court appraisal, was sold for $10,000.00 and the proceeds thereof was deposited into a specially identified account at the Hillsdale County National Bank.

"12. The Hillsdale County National Bank prays that the Court enter its Order abandoning the assets which are the proceeds of the sale of the Reo Mixer Truck and the Trustee prays that the Court determine that the remaining $10,000.00, plus accrued interest, is the property of the Trustee in Bankruptcy due to an alleged voidable preferential transfer.

"13. Both parties agree that the Court may enter an Order permitting the $15,-000.00 proceeds of the sale of the Ford Mixer Truck to go to the Bank, plus interest."

The amendment of June 3, 1980, stipulated that Quality Redi-Mix, Inc., "was solvent at the time of the execution of the security agreement in question." Bumpus testified that the debtor had been insolvent when the business closed in 1977 and also at the time the letters were sent in 1978.

Order adjudicating Quality Redi-Mix, Inc., a bankrupt was entered June 5, 1979.

This case is to be decided under the provisions of the Bankruptcy Act of 1898. Bankruptcy Reform Act of 1978, Title IV, § 403(a).

Bankruptcy Act of 1898, § 60(a)(1), former 11 U.S.C. § 96(a)(1), sets out the elements of a preference:

"§ 60. Preferred Creditors. a. (1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Section 60(b) contains the additional requirement for making the preference voidable:

"b. Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent."

I. Analysis of this case should begin with the issue of whether or not the Bank's security interest in the Reo mixer was perfected prior to the "preference period", which began on September 15, 1978.

The Michigan provision for perfection of security interests in the type of collateral involved in this case is former M.C.L. § 440.9302(4) [former M.S.A. § 19.9302(4) (Callaghan 1975)] [1]:

"(4) ... in the case of a security interest in a vehicle which is not inventory held for sale as referred to in subsection (3) or an accessory as referred to therein, the filing required to perfect such security interest is not only the filing with the Secretary of State of an application for a certificate of title containing a statement

1. Former M.C.L. § 440.9302(4) (1970), along with many other sections of Article Nine, was recently amended by Michigan's adoption of the 1972 Revision of the Code. 1978 Mich. P.A. No. 369 (eff. Jan. 1, 1979). However, transactions entered into before the effective date of the amendatory act continue to be controlled by the pre-amendment provisions of Article Nine. M.C.L.A. § 440.11102 [M.S.A. § 19.11102 (Callaghan Supp.1980–81)]. All citations to the Michigan U.C.C. in this opinion, unless otherwise noted, are to the pre-amendment law.

which regard to such security interest as provided in section 217 of Act No. 300 of the Public Acts of 1949, as amended, but in addition the filing of a financing statement with the register of deeds as provided in section 9401(1) the effective time of the filing required for the perfection of such security interest is determined by the time of filing with the Secretary of State and the register of deeds, whichever occurs later."

The "Section 217" referred to was codified as former M.C.L. § 257.217 [M.S.A. § 9.1917 (Callaghan 1973)][2] which in part read:

"(a) Every owner of a vehicle subject to registration hereunder shall make application to the department for the registration thereof and issuance of a certificate of title for such vehicle accompanied by the required fee upon the appropriate form or forms furnished by the department and every application for a certificate shall bear the signature of the owner written with pen and ink and said signature shall be acknowledged by the owner before a person authorized to administer oaths and said application shall contain:

"(3) A statement of the applicant's title and the names and addresses of the holders of any security interests in the vehicle and in any accessory thereon, in the order of their priority."

As an exhibit to its complaint, the Bank submitted copies, obtained from the Secretary of State's office, of the Application for Michigan Title for the mixer signed on April 4, 1972; both sides of the certificate of title; and the Application for Certificate of Title signed September 20, 1978. The copy of the April 4 application does not indicate the presence of any security interest in the Reo mixer for the Bank.

In *Hall v. United States*, 314 F.Supp. 1135, 1137 n.3 (N.D.Cal.1970) it is stated, "It is a basic rule that statements made in a Complaint may be admitted against the pleader as evidence in the form of judicial admissions ... The usual rule is that such admissions are conclusive ..." 4 Wigmore, Evidence § 1064(2) (Chadbourn rev. 1972) states:

"The pleadings in a cause are, for the purposes of use in that suit, not mere ordinary admissions, but judicial admissions; i. e., they are not a means of evidence, but a waiver of all controversy (so far as the opponent may desire to take advantage of them) and therefore a limitation of the issues. Neither party may dispute beyond these limits. Thus, any reference that may be made to them, where the one party desires to avail himself of the other's pleading, is not a process of using evidence, but an invocation of the right to confine the issues and to insist on treating as established the facts admitted in the pleadings.

"This much being generally conceded, it follows that a party may at any and all times invoke the language of his opponent's pleading on that particular issue as rendering certain facts indisputable; and that, in doing this, he is on the one hand neither required nor allowed to offer the pleading in evidence in the ordinary manner, nor on the other hand forbidden to comment in argument without having made a formal offer; for he is merely advocating a construction of the infrajudicial act of waiver of proof . . . . ."

Fed.R.Civ.P. 10(c) [made applicable to adversary proceedings through Bankruptcy Rule 710] reads in part, ". . . A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

■ Thus, by virtue of the April 4, 1972, Application for Michigan Title submitted by the Bank as part of its complaint, I find that the requirement of Section 217 of the Michigan Motor Vehicle Code was not met, and that the Bank's security interest in the 1972 Reo Mixer was not perfected in accordance with former M.C.L. § 440.9302 [M.S.A. § 19.9302 (Callaghan 1975)]. I also conclude from paragraph 9 of the stipula-

---

**2.** Former M.C.L. § 257.217 (1970) was amended by 1978 Mich. P.A. No. 507 (eff. March 30, 1979) which contained a statement providing, "this amendatory act shall not take effect until July 1, 1979."

tion that the Bank's security interest was not perfected until after the preference period had commenced.

II. The Bank has raised a number of issues under § 60(a)(1) and (b) of the 1898 Act.

A. First, the Bank states that "the transfer of interest was not for an antecedent debt." From the discussion which follows this assertion in the Bank's brief, it is evident that the Bank's arguments are premised on the security interest being perfected before the preference period commenced, which is not the case here. The cases cited by the Bank do not help its position. *Rosenberg v. Rudnick*, 262 F.Supp. 635 (D.Mass.1975); *DuBay v. Williams*, 417 F.2d 1277 (9th Cir. 1969), and *In re Portland Newspaper Publishing Co.*, 271 F.Supp. 395 (D.Or.1967) *aff'd sub nom. DuBay v. Williams, supra*, involved security interests in after-acquired collateral which were perfected before the preference period commenced.

█ The Bank also cites a line of cases including *Sexton v. Kessler*, 225 U.S. 90, 32 S.Ct. 657, 56 L.Ed. 995 (1912); *Finance & Guaranty Co. v. Oppenheimer*, 276 U.S. 10, 48 S.Ct. 209, 72 L.Ed. 443 (1928); *Crosby v. Packer*, 22 F.2d 611 (1st Cir. 1927); *Jordan v. Greenwood*, 23 F.2d 506 (D.Me., 1928). These cases were decided under the 1910 version of § 60 of the Bankruptcy Act dealing with transfers; the section was amended later, with the result that these cases are of doubtful value today.[3]

Under § 60(a)(2) of the Act,

"(2) For the purposes of subdivisions a and b of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee."

The Bank's delayed perfection of its security interest on September 20, 1978, was such a transfer. *E. g. Cissell v. First National Bank of Cincinnati*, 476 F.Supp. 474 (1978); 3 *Collier on Bankruptcy* (Part 2) ¶¶ 60.07, 60.38–9, 60.42 (1977). The loan was in default; the Bank does not claim, and the proofs do not show, any giving of new value of the debtor at the time of perfection. The Bank's perfection of its security interest was clearly a transfer on account of an antecedent debt.

B. The Bank also claimed that debtor was solvent at the time of the transfer. Bankruptcy Act of 1898, § 1(19) states:

"(19) A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts;"

█ The schedules and balance sheet contained in the Court's file show that the debtor was insolvent when the petition was filed. Bumpus' testimony is sufficient to show that debtor was insolvent at the time of the transfer; his testimony was not seriously challenged by the bank at the hearing.

C. The Bank's argument that the transfer did not enable it to obtain a greater percentage of its debt than any other creditor in its class was (by its own admission) premised upon a finding that the lien was perfected before the preference period commenced. Since that is not the Court's finding, the Bank's argument is without merit.

I find that all of the elements of a preferential transfer set forth in § 60(a)(1) have been shown to exist by the trustee in this case.

**3.** *See* 3 part 2 *Collier on Bankruptcy* (14th Ed. 1964) ¶ 60.05 and 60.06, pp. 771–85, and *Glessner v. Massey-Ferguson, Inc.*, 353 F.2d 986 (9th Cir., 1966) *cert. den.* 384 U.S. 970, 86 S.Ct.

1859, 16 L.Ed.2d 681 (1966) for a general discussion of the changes in the law affecting *Sexton, supra*, and similar cases.

D. The Bank also argues that the transfer is not voidable because it did not have reasonable cause to believe that debtor was insolvent at the time of the transfer. As with other elements of preference, the trustee has the burden of proving "reasonable cause to believe." E. g. *City National Bank v. Slocum*, 272 F. 11 (6th Cir. 1921) *cert. den.* 257 U.S. 637, 42 S.Ct. 49, 66 L.Ed. 409 (1921). Each case is viewed and interpreted in the light of its facts, circumstances and surroundings. *Joseph Weld & Co. v. Provident Life & Trust Co.*, 214 U.S. 292, 29 S.Ct. 619, 53 L.Ed. 1003 (1909). There is a good discussion of the general rule, set out in 3 *Collier on Bankruptcy* (14th Ed.) ¶ 60.53(1), pp. 1057 et seq.:

> "Knowledge of insolvency is not necessary, nor even actual belief thereof; all that is required is a reasonable cause to believe that the debtor was insolvent at the time of the preferential transfer. A creditor has reasonable cause to believe that a debtor is insolvent when such a state of facts is brought to the creditor's notice, respecting the affairs and pecuniary condition of the debtor, as would lead a prudent business person to the conclusion that the debtor is insolvent. Of course, a creditor may not wilfully close his eyes that he might remain in ignorance of his debtor's condition. On the contrary, where circumstances are such as would incite a man of ordinary prudence to make inquiry, the creditor is chargeable with notice of all facts which a reasonably diligent inquiry would have disclosed.* * * And, if the creditor fails to make an inquiry when he has a duty to do so, he will be charged with all the knowledge which he would have acquired had he conducted such an investigation."

In this case the Bank has stipulated that it received a letter from debtor's attorney "... declaring that the now Bankrupt was insolvent (its assets estimated at approximately $50,052.00 and its liabilities estimated at approximately $63,832.00) and asking the cooperation of its creditors in an attempt to avoid Bankruptcy proceedings..." The Bank received this letter at some time prior to the transfer in question. The Bank has offered no explanation for its reexamining its security interest and then taking action to ensure its perfection, other than its being a "standard procedure." Of course, such "standard procedures" are what the preference laws are meant to remedy. I think that the receipt of the solvency notice and the nexus between receipt of the notice and perfection of the security interest shows that the Bank had "reasonable cause" and did in fact believe that debtor was insolvent at the time of the transfer.

■ III. Finally, the Bank claims that the trustee should be "estopped" from asserting this preference claim because it would be a "gross injustice for the Bank to have fulfilled its obligation and not be able to receive what it bargained for..." The Bank cites "*In re Rosen*, 157 F.2d 997 (E.D. Mich.1946)" which is incorrect; it should be cited *In re Rosen*, 157 F.2d 997 (3d Cir. 1946). That case concerned Pennsylvania and New Jersey law; it was decided under the "bona fide purchaser test" of old Section 60(a) (before the 1950 amendment to the Act) as construed by *Corn Exchange National Bank and Trust Co. v. Klauder*, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943). *Rosen* simply held that under New Jersey law, first assignees had superior rights over subsequent bona fide assignees, without notice of the assignment to the account debtors, thus, distinguishing the result reached in *Klauder*. The Court, in explaining its theories, said, "... or one may speak of estoppel, though this simply labels a result for the elements of an estoppel en pais are not present." It follows that *Rosen* case has little, if anything to do with the case at bar.

Little more need be said on this issue, except to observe that, if every preferential transferee could assert an "estoppel" against the trustee on the basis of an expectation of being repaid the antecedent debt, no preferential transfers would ever be recovered by trustees in bankruptcy. The argument is utterly without merit.

The lien of Hillsdale County National Bank is invalid as to the 1972 Diamond Reo

mixer, and the proceeds from the sale of the mixer plus interest on those proceeds are awarded to the trustee.